DETROIT BAR ASS'N *v.* UNION GUARDIAN TRUST CO.

1. Attorney and Client—Practice of Law—Corporations.

   Corporations are not only not licensed to practice law but are specifically prohibited from doing so (2 Comp. Laws 1929, § 10175).

2. Same—Admission to Bar—Practice of Law.

   Authority to admit to the bar and to disbar necessarily carries with it power to define what constitutes the practice of the law and to exclude unauthorized persons therefrom.

3. Same—Practice of Law—Licenses.

   The practice of law is a special field reserved to lawyers duly licensed by the court.

4. Same—Control of Procedure.

   In a case in court, determination of the steps to be taken and control of procedure and proceedings to enforce the remedy are exclusively functions of an attorney at law, where a party does not appear in his own person.

5. Same—Personal Nature of Relationship.

   Rights and duties arising out of the relationship of attorney and client are not measured by the yardstick of commercial or trade transactions as the relation is a purely personal one requiring undivided allegiance to client by the lawyer, hence there is no place in such relationship for its establishment by a middleman having an interest in the *res* or control of the procedure.

6. Same—Drawing Wills—Corporations.

   Drawing of wills *held*, practice of law prohibited by corporations which procured attorneys or paid its own attorneys for such services, because of legal knowledge necessary to do such work and because such instruments, to become effective, must be filed in and administered by a court.

7. Same—Practice of Law—Construction of Statutes.

   Statute prohibiting corporations from practicing law which specifically excepted application of its provisions to corporations lawfully engaged in a business authorized by the provi-

sions of any existing statute *held,* to express legislative intent not to restrict powers conferred by such other acts (2 Comp. Laws 1929, § 10175).

8. CONSTITUTIONAL LAW—PRACTICE OF LAW—COURTS—LEGISLATURE.

Control of the practice of law is vested in the courts so far as it is necessary to their self-protection but beyond that the legislature also has constitutional rights in the exercise of the police power.

9. SAME—TRUST COMPANIES—FIDUCIARIES—COURTS.

Statute authorizing organization of trust companies and empowering them to hold property and act as executors, administrators, trustees, receivers, assignees, guardians, or as agents for transaction of business, management of estates, collection of rents, interest, dividends, mortgages, bonds, bills, notes, and securities, *held,* not invalid as an invasion of judicial powers lodged in the courts by the Constitution (3 Comp. Laws 1929, § 12018, as amended by Act No. 238, Pub. Acts 1933).

10. TRUSTS—DRAFTING AGREEMENTS—COURTS—PRACTICE OF LAW.

Since trust agreements which are revocable by the trustor and which do not contain provisions of a donative or testamentary character are mere agreements between contracting parties fixing their respective rights and duties, the drafting of such agreements does not constitute the practice of law nor involve conduct on the part of the parties over which courts have judicial control.

11. SAME—TRUST COMPANIES—TESTAMENTARY TRUSTS.

Legislature, in passing statute authorizing organization of trust companies and empowering them to execute trusts of a testamentary character, at a time when practice of probate court with respect thereto was rather definitely established and much of the administrative business was conducted by representatives of estates without assistance of legal counsel, *held,* to have contemplated that a trust company might perform, as a part of its regular established business, the ordinary and incidental services relative to a trust provided it made no charge other than statutory fees (3 Comp. Laws 1929, § 12018).

12. SAME—APPOINTMENT OF TRUSTEE BY COURT.

The appointment by the probate court of a natural person or a trust company as fiduciary to execute a trust empowers the appointee to execute the trust under the supervision of the court.

13. EXECUTORS AND ADMINISTRATORS—AGENT—ATTORNEY—COMPENSATION.

Generally an executor or administrator who engages an agent or attorney to perform services which he ought to perform himself will not be allowed compensation therefor as personal performance by the fiduciary is contemplated by the statute.

14. INJUNCTION—TRUST COMPANIES—UNAUTHORIZED ACTS.

Provision of decree, in suit to enjoin trust company from performing unauthorized acts, enjoining it from performing any act or drawing any paper in connection with the administration of any estate in the probate court or any other court except the same be ordinary or incidental services for which no charge is made or fee claimed *held*, to mark out with sufficient definition and detail the field within which a trust company may function legally.

15. ATTORNEY AND CLIENT—PRACTICE OF LAW—SOLICITATION OF LAW BUSINESS—INJUNCTIONS.

Since the practice of law is without the corporate powers of a trust company, the solicitation of law business by such a company directly or indirectly or soliciting business for lawyers by recommendations or other inducements *held*, properly enjoined at suit of bar association.

16. APPEAL AND ERROR—QUESTIONS REVIEWABLE—WAIVER.

Question of practice presented by appeal of defendant, which question appears to be waived by decree proposed for entry in Supreme Court, is passed.

17. COSTS—APPEAL—PUBLIC QUESTIONS—POSITION NOT SUSTAINED BY EITHER PARTY.

No costs are awarded either party on appeal and cross-appeal in suit by bar association to enjoin trust company from alleged illegal practice of law where questions presented are of public importance and neither of the appealing parties has fully sustained its position.

Appeal from Wayne; Campbell (Allan), J. Submitted June 8, 1937. (Docket No. 5, Calendar No. 39,124.) Decided October 4, 1937. Rehearing denied December 15, 1937. Reconsideration denied October 3, 1938. See *post*, 707.

Bill by Detroit Bar Association, George E. Brand, Ezra H. Frye, and Ben O. Shepherd against Union

Guardian Trust Company, a Michigan corporation, to restrain alleged illegal practice of law. From decree entered, both parties appeal. Modified and affirmed.

*George E. Brand, Ezra H. Frye,* and *Ben O. Shepherd,* for plaintiffs.

*Shaeffer & Dahling,* for defendant.

NORTH, J. This is an injunction suit wherein plaintiffs seek to enjoin alleged unauthorized or unlawful practice of law by the defendant trust company, a Michigan corporation. From a decree granting injunctive relief, each party has appealed.

Concededly the defendant corporation is not licensed to practice law. Instead it is specifically prohibited by statute from doing so. In part the statute reads:

"It shall be unlawful for any corporation or voluntary association to practice or appear as an attorney at law for any person other than itself in any court in this State or before any judicial body, or to make it a business to practice as an attorney at law, for any person other than itself, in any of said courts or to hold itself out to the public as being entitled to practice law, or render or furnish legal services or advice, or to furnish attorneys or counsel or to render legal services of any kind in actions or proceedings of any nature or in any other way or manner, or in any other manner to assume to be entitled to practice law. * * * The fact that such officer, trustee, director, agent or employee (of the corporation) shall be a duly and regularly admitted attorney at law shall not be held to permit or allow any such corporation or voluntary association to do the acts prohibited herein. * * * This section shall not apply to any corporation or voluntary association lawfully engaged in a business authorized by the pro-

visions of any existing statute. * * * But no corporation shall be permitted to render any services which cannot lawfully be rendered by a person not admitted to practice law in this State nor to solicit directly or indirectly professional employment for a lawyer." 2 Comp. Laws 1929, § 10175.

Adjudication of the issues presented in the instant case is rendered difficult because of the lack of an exact definition of what constitutes the practice of law. In their brief, plaintiffs say:

"The determination as to what constitutes 'practice of law' is regarded as a judicial function. * * * Even if possible, it is not practical or advisable to attempt specific definition of 'practice of law.' The few efforts to do so have added little to general characterization."

The supreme court of Rhode Island has said:

"Authority to admit to the bar and to disbar necessarily carries with it power to define what constitutes the practice of the law, and to exclude unauthorized persons therefrom." *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n,* 55 R. I. 122, 130 (179 Atl. 139, 100 A. L. R. 226).

See, also, *Richmond Ass'n of Credit Men* v. *Bar Ass'n of City of Richmond,* 167 Va. 327 (189 S. E. 153); *Depew* v. *Wichita Ass'n of Credit Men, Inc.,* 142 Kan. 403 (49 Pac. [2d] 1041); *Creditors' Service Corp.* v. *Cummings,* 57 R. I. 291 (190 Atl. 2).

"The practice of law is difficult to define. Perhaps it does not admit of exact definition. * * * That the practice of the law is a special field reserved to lawyers duly licensed by the court, no one denies." *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n, supra,* 126.

"It would be difficult to give an all-inclusive definition of the practice of law, and we will not attempt

to do so." *Clark* v. *Austin*, 340 Mo. 467 (101 S. W. [2d] 977).

"This court and other courts have always been reluctant to adopt an all-inclusive definition of the term 'practice of law.'" *People, ex rel. Chicago Bar Ass'n,* v. *Goodman,* 366 Ill. 346 (8 N. E. [2d] 941).

As bearing somewhat upon this phase of the instant case it may be noted that in a decision involving illegal practice of law we have said:

"In a case in court, determination of the steps to be taken and control of procedure and proceedings to enforce the remedy are exclusively functions of an attorney at law, where a party does not appear in his own person. 6 C. J. p. 643.    *    *    *

"The rights and duties arising out of the relationship of attorney and client are not measured by the yardstick of commercial or trade transactions. The relation is purely personal. The lawyer owes to his client undivided allegiance. There is no place in the relationship for its establishment by a middleman having an interest in the *res* or control of the procedure." *Hightower* v. *Detroit Edison Co.,* 262 Mich. 1, 9, 12 (86 A. L. R. 509).

Without giving full sanction thereto, it may be noted that other courts have expressed much broader views as to what constitutes the practice of law.

"Counsel and advice, the drawing of agreements, the organization of corporations and preparing papers connected therewith, the drafting of legal documents of all kinds, including wills, are activities which have long been classed as law practice." *People* v. *Alfani,* 227 N. Y. 334, 338 (125 N. E. 671).

"Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments

covering an extensive field of business and trust relations and other affairs. Although these transactions may have no direct connection with court proceedings, they are always subject to become involved in litigation." *Opinion of the Justices to the Senate,* 289 Mass. 607, 613 (194 N. E. 313).

"It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law." *In re Duncan,* 83 S. C. 186 (65 S. E. 210, 24 L. R. A. [N. S.] 750, 18 Ann. Cas. 657).

We turn now to the specific questions presented in the instant case. Counsel stipulated that three issues were presented to the trial court for adjudication. We quote and consider them in order.

1. "That it is illegal for the defendant trust company to draft or have drafted by its attorneys or attorney, or others selected or paid by it therefor, any will or proposed form, outline or suggestion thereof."

Formerly defendant had actively engaged in the business of drafting wills. Many of such transactions were the result of defendant's systematic solicitation of business of this character. But this phase of defendant's activities had been wholly discontinued before this suit was instituted, and counsel for the respective parties agreed that plaintiffs

might take a decree with appropriate injunctive provisions. That portion of the decree reads:

"Defendant Union Guardian Trust Company is hereby permanently enjoined and restrained from:

"(a) drafting, or having drafted for others by its attorneys or attorney or others selected or paid by it therefor, any will * * * or proposed form or outline thereof intended for individual use."

There being no appeal from this phase of the decree, it is affirmed. Such is the holding in many other jurisdictions.

"Corporations cannot practice law. 'Practice of the law' is not limited to practice before the courts. * * * But under all attempted definitions it includes the drafting of documents which of necessity must be presented to, and their legality passed upon by, the courts.

"We think the drawing of wills, as a practice, is the practice of law, and this for three reasons: First, because of the profound legal knowledge necessary for one who makes a practice of this work; second, because all these instruments, before they become effective, must be filed in and administered by a court; and third, because what we consider the weight of authority so holds." *People, ex rel. Colorado Bar Ass'n Grievance Committee,* v. *Denver Clearing House Banks,* 99 Col. 50 (59 Pac. [2d] 468).

As to the practice of drafting wills by corporations or laymen constituting unauthorized practice of law, see *People* v. *People's Trust Co.,* 180 App. Div. 494 (167 N. Y. Supp. 767); *In re Contempt Proceedings of Eastern Idaho Loan & Trust Co.,* 49 Idaho, 280 (288 Pac. 157, 73 A. L. R. 1323); *People, ex rel. Illinois State Bar Ass'n,* v. *Peoples Stock Yards State Bank,* 344 Ill. 462 (176 N. E. 901); *State, ex. inf. Miller,* v. *St. Louis Union Trust Co.,* 335 Mo. 845 (74 S. W. [2d] 348).

2. The second issue presented to the trial court was:

"That it is illegal for the defendant trust company to draft or have drafted by its attorneys or attorney, or others selected or paid by it therefor, any trust agreement or proposed form, outline or suggestion thereof in which defendant either has no personal interest or under which said defendant acts or is to act as a fiduciary."

The decree in the circuit court contained the same injunctive provision as to drafting trust agreements by defendant as that just above quoted pertaining to wills. The defendant contends this was error.

Plaintiffs' position is indicated by the following statement in their brief:

"However, every argument against trust company drafting of wills is equally applicable to trust company drafting of trust agreements for prospective trustors."

On the other hand, defendant denies it is engaged in unauthorized practice of law and, as stated in its brief:

"Defendant asserts that the acts which it performs are but such as arise in the usual and regular course of and are incident to the business which defendant is organized and authorized by statute to do, namely —acting as fiduciary."

The statute under which the defendant trust company is organized (3 Comp. Laws 1929, §§ 11997-12042) provides that such companies shall have, among others, the following powers:

"To take, receive and hold, and repay, reconvey and dispose of any effects and property, both real and personal, which may be granted, committed, transferred or conveyed to it, with its consent, upon any terms, or upon any trust or trusts whatsoever

at any time or times, by any person or persons; * * * and to administer, fulfill and discharge the duties of such trust or trusts, for such remuneration as may be agreed on; and any such company shall have power to act generally as agents or attorneys for the transaction of business, the management of estates, the collection of rents, interest, dividends, mortgages, bonds, bills, notes and securities for moneys.'' 3 Comp. Laws 1929, § 12018.*

In this same section (3 Comp. Laws 1929, § 12018) it is further provided that a trust company may be designated and serve as an executor, administrator, trustee, receiver or assignee, or guardian under appointment by a court. It must be borne in mind that in the statute hereinbefore partially quoted (3 Comp. Laws 1929, § 10175) by which corporations are forbidden to practice law it is provided:

''This section shall not apply to any corporation or voluntary association lawfully engaged in a business authorized by the provisions of any existing statute.''

It is apparent that this provision was embodied in the statute by the legislature so it might be definitely understood that it was not the intent of the legislature by this enactment to restrict the powers conferred upon corporations by other acts of the legislature under which such corporations were organized. But plaintiffs assert that any provision of a statute which purported to authorize corporations to perform acts which constitute the practice of law would be unconstitutional because it is a judicial function, not a legislative power, to determine what constitutes the practice of law and who are authorized to practice law. Such has been the holding of certain courts. See *People, ex rel. Illinois State*

---

* This section was amended by Act No. 238, Pub. Acts 1933.—RE-PORTER.

*Bar Ass'n,* v. *Peoples Stock Yards State Bank, supra; People, ex rel. Chicago Bar Ass'n,* v. *Motorists Ass'n of Illinois,* 354 Ill. 595 (188 N. E. 827); *Opinion of the Justices to the Senate, supra; Rhode Island Bar Ass'n* v. *Automobile Service Ass'n, supra.* But notwithstanding the persuasiveness of the foregoing decisions and others which might be cited, we are much impressed with the careful consideration given this question by the supreme court of Wisconsin. That court has said:

"We admit that courts have no concern with the qualifications of lawyers except in so far as they are permitted to participate in the administration of the law in actions and proceedings in courts of law and equity. If the legislature desires to classify attorneys at law, we are free to say that the courts would not be concerned with the qualifications of those permitted to perform legal services or to give legal advice which has nothing to do with the administration of the law in actions and proceedings in courts of law and equity. The legislature may establish such qualifications as it chooses for those who are permitted to act as conveyancers, examiners of title, organizers of corporations, or any other type of legal services which does not give them power to influence the course of justice as administered by the courts." *In re Cannon,* 206 Wis. 374, 395 (240 N. W. 441).

In a case in this same field of law, the supreme court of North Carolina, concerning the "inherent" power of courts, has said:

"The views we maintain on this question are supported, we think, by the best considered authorities. *Ex parte Thompson,* 10 N. C. 355; *In Matter of Application of Cooper,* 22 N. Y. 67; *Lelia J. Robinson's Case,* 131 Mass. 376 (41 Am. Rep. 239); *Ex parte Yale,* 24 Cal. 241 (85 Am. Dec. 62); *State* v.

*Foreman,* 3 Mo. 602; Freund on Police Power, §§ 646–650.

"In *Ex parte Thompson* the power is treated as legislative. In *Ex parte Yale* it is held, that 'the manner, terms and conditions of their (attorneys) admission to practice, and of their continuing in practice, as well as their powers, duties and privileges, are proper subjects of legislative control to the same extent, and subject to the same limitations, as in the case of any other profession or business that is created or regulated by statute.'

"In *Matter of Application of Cooper* the legislature had directed that applicants holding diplomas from Columbia College should be admitted, and the act was upheld and the admission required.

"In *Lelia J. Robinson's Case,* a woman had offered for admission to the bar in Massachusetts, and was rejected because the statute had not so provided. The question is treated throughout as a matter exclusively under legislative control, and Mr. Chief Justice Gray closes the opinion in this way: 'It is hardly necessary to add that our duty is limited to declaring law as it is; and that whether any change in that law would be wise or expedient is a question for the legislative, and not for the judicial department of the government.' Many other authorities could be cited to the same effect." *In re Applicants for License,* 143 N. C. 1, 9, (55 S. E. 635, 10 L. R. A. [N. S.] 288, 10 Ann. Cas. 187).

In an opinion of the supreme court of Missouri in which five judges concurred and but one dissented, it is said:

"So far as is necessary to their self-protection the right of the courts is paramount or exclusive; but beyond that point the legislative department also has constitutional rights in the exercise of the police power." *Clark* v. *Austin, supra.*

In accord with the foregoing authorities, we hold that, as indicated by the quoted opinions, the prac-

tice of law in certain aspects is solely a matter within judicial control. But there are also other activities commonly considered and sometimes judicially held to be the practice of law which are subject to legislative control. In the instant case there is no need nor do we attempt to define definitely a line of demarcation which separates the one phase of activity from the other. But we do hold the statute (3 Comp. Laws 1929, § 12018) is not invalid on the ground that the legislature, by investing trust companies with certain powers specified in the statute, has invaded the judicial powers lodged in the courts by the Constitution.

The specific question for determination on this phase of the instant case is whether there was error in the circuit judge's decree wherein, without qualification, it enjoins the defendant from:

"Drafting, or having drafted for others by its attorneys or attorney or others selected or paid by it therefor, any * * * trust agreement or proposed form or outline thereof intended for individual use."

The contention of defendant in substance is that in so far as the decree enjoins it from drafting trust agreements which by their terms are revocable by the trustor and which contain no provisions of a donative or testamentary character, it deprives defendant of the right to exercise powers with which it has been lawfully vested by the legislature; and that the question of such powers being exercised by defendant and other trust companies is a legislative question, not one for judicial control. As a reason for its contention defendant points out that trust agreements which are revocable by the trustor and which do not contain provisions of a donative or testamentary character are mere agreements between the contracting parties fixing their respective rights and duties, that drafting such agreements in

no way constitutes the practice of law, and does not involve conduct on the part of the respective parties over which courts have judicial control. We think defendant's contention is sound. Within the limitations indicated, drafting trust agreements is no more the practice of law, nor does it any more contemplate action in or by the courts, than does the ordinary run of agreements in the every day activities of the commercial and industrial world. A construction agreement may be considered as a fair example. If the contract project is of any magnitude it involves the making, the adoption, the interpretation and the execution of plans and specifications. It is a matter of common knowledge that often, and perhaps usually, these details are of such a complex and technical character as not to be understood readily by the property owner who is a party to the construction contract. Nonetheless his right to enter into such a contract cannot be questioned nor is it requisite that it be drafted by one skilled in that field. The same may be said of trust agreements of the limited character which the defendant is now contending that it has the right to solicit, draft and consummate with prospective trustors.

Defendant consents that plaintiffs may take a decree wherein defendant and its agents and employees shall be restrained from drafting or furnishing trust instruments which are not revocable by the trustor or which contain provisions of a donative or testamentary character. This we think is the extent of the injunctive relief to which plaintiffs are entitled on this phase of the case; and the decree entered in the circuit court should be modified accordingly.

3. The third and last issue which counsel stipulated should be submitted to the trial court, as

stated in the opinion filed by the circuit judge, is as follows:

"That it is illegal for the defendant trust company to draft or have drafted and/or present in court by its lay employees, officers, agents, personal attorneys or by attorneys other than those employed at the expense of the estate or trust involved, petitions, orders or other legal documents (except fiduciary bonds and fiduciary accounts with prayer solely for allowance thereof) relating to or affecting estates or trusts as to which said defendant is or is to become a fiduciary, whether such documents be regarded as administrative, formal or otherwise."

As to this phase of the case the decree entered in the circuit court enjoined defendant from "performing any act or drawing any paper (which would otherwise constitute the practice of law) in connection with the administration of any estate in the probate court or any other court except the same be ordinary or incidental services for which no charge is made or fee claimed."

Each of the parties to this appeal contends for material modifications of this part of the decree, and each urges that at least the foregoing provision of the decree should be clarified. While not entirely so, the principal field in which this phase of this controversy arises is practice in the probate courts. We will consider the question mainly from that angle. Plaintiffs point out that probate courts are constitutional courts of record and that the preparation and presentation of papers having to do with proceedings in such courts, as well as attending the proceedings in court when such matters are considered, constitute the practice of law. They urge, as being controlling, the statutory provisions whereby it is made unlawful for any person who is not a regularly licensed attorney and counsellor of this

State to practice law or to engage in the law business (3 Comp. Laws 1929, § 13587) and also the statute hereinbefore cited and quoted in part which makes it unlawful for any corporation or voluntary association ''to practice or appear as an attorney at law for any person other than itself in any court in this State or before any judicial body.'' As to further details of the statute, see 3 Comp. Laws 1929, § 10175. Plaintiffs assert that defendant should be enjoined from drafting or presenting to a court any petition, order or legal document ''except fiduciary bonds and fiduciary accounts with prayer solely for allowance thereof.'' On the other hand defendant contends that the proper construction of the statutory provision last above cited requires consideration in connection therewith of those statutory provisions under which the defendant trust company is incorporated and particularly that portion of the statute (3 Comp. Laws 1929, § 12018) wherein the specific powers with which such corporations are invested are detailed. We have already quoted this statute in part. It is sufficient to note again that the statute expressly confers upon such corporations the power to act generally as agents or attorneys in the management of estates, to serve as executors, administrators, trustees, receivers or assignees, or guardians under an appointment by court and other kindred powers. We have already stated herein that we are of the opinion this statute is not unconstitutional in granting such powers to these corporations notwithstanding they may be thereby authorized to engage in some types of business which are within or border closely upon certain phases of the practice of law as that term is considered in the decisions of various courts.

Plaintiffs, in conflict with defendant's contention, assert that the interest which a trust company in a

representative capacity (administrator or other fiduciary relation) may have in an estate is not such an interest as entitles one under the law to appear in a court proceedings *in propria persona;* and that this is so regardless of whether direct compensation is or is not received for services so rendered. For this reason plaintiffs contend that the circuit judge unduly restricted the pertinent provision of his decree by providing therein "except the same be ordinary or incidental services for which no charge is made or fee claimed." But defendant asserts that in so far as the preparation and presentation of papers to a court and attending the hearing of these matters pertain only to the "ordinary and incidental services," and no compensation (except statutory fees) is received therefor, it is not the practice of law as to which the trust company should be enjoined, because the doing of these several things is in the course of and incident to the execution and discharge of functions which the trust company by express statutory provision is authorized to perform.

In this State statutory provisions for the incorporation of trust companies have been a part of our law for upwards of half a century. See Act No. 58, Pub. Acts 1871. The act just noted was amended by Act No. 123, Pub. Acts 1883, and the powers expressly conferred by the original act were enlarged or at least made more definite by providing that a corporation organized under the act should have the power to accept and execute any trust "which may be conferred upon it as executor or administrator of the estate and effects of any deceased person, by any last will and testament of any deceased person, or by appointment of the probate court of any county in this State, and to act as such trustee, executor, or administrator, in any and all matters em-

braced in such trust, or contemplated by such appointment."

The acts above referred to were repealed and a new act for the incorporation of trust companies passed by the legislature in 1889. See Act No. 108, Pub. Acts 1889. This later act, the pertinent portion of which is embodied in 3 Comp. Laws 1929, § 12018, hereinbefore quoted in part, re-enacted the provisions which empowered trust companies "to accept and to execute the offices of executor, administrator, trustee, receiver or assignee." Prior to the date of the amendatory act (1883), the practice in the probate courts of this state and proceedings of a similar character in other courts were rather definitely established. In general the practice in probate courts has not changed greatly in character, though jurisdiction has been somewhat extended. Much of the proceedings in probate courts are primarily of an administrative character. A judge of probate need not be a licensed attorney at law. It is a matter of common knowledge that very generally the representatives of estates pending in such courts have, without the assistance of legal counsel, presented to the courts the papers and issues necessary or incidental to the execution of the trust imposed upon such representatives. Such was the state of the administration of that phase of the law with which we are here concerned at the time the legislature invested trust companies with powers of the character above noted. This being true it would seem to be a necessary inference that the legislature contemplated that such companies should thereby be authorized and empowered to present matters of this character which were ordinarily incident to the execution of their respective trusts to the courts in the same manner and to the same extent as might an individual serving in like capacity; and the legislature

must have intended to empower trust companies to carry on these activities as a part of their regular business. The conclusion is that the legislature in passing the pertinent statutes must have contemplated that a trust company so authorized might perform, as a part of its regular established business, the ordinary and incidental services relative to a trust which it had assumed, provided that for the rendering of such services it made no charge other than that of the fees provided by statute.

The very purpose of appointing either an individual or a trust company to act as the administrator of an estate or to serve otherwise under the order of the court in a trust capacity, is to accomplish the execution of the trust. It would be strange indeed if a court in which the proceeding was pending so appointed a trust company and continued it in such appointment, but simultaneously took the position that such appointee was without power to execute the trust. Instead we think the very appointment of the court in a sense empowers such fiduciary to execute the trust under the supervision of the court, in the same manner that the court in admitting one to the practice of law authorizes and indeed appoints him to serve as and to discharge the duties of a solicitor or attorney at law.

Rules governing practice in probate courts and probate procedure books indicate rather definitely that one appointed in a representative or fiduciary capacity in a proceeding pending in the probate court is expected, or at least has the power, to perform such acts as are incidental and routine in the execution of the trust. See Michigan Probate Rules, Rule No. 1 and Rule No. 11, § 3, each of which contemplates prosecution of the proceedings either with or without an attorney of record. In 1 Beecher's Michigan Law & Practice in Probate Courts, § 166,

under the title "Employment of Agent or Attorneys" it is said:

"The general rule is that where an executor or administrator engages or retains an agent or attorney to perform services which he ought to perform himself he will not ordinarily be allowed compensation therefor, for the reason that the statute contemplates a personal performance of the services and therefore does not empower him to engage or retain an agent or attorney at the expense of the estate, but there are exceptions."

We are not impressed with the claim of the respective parties that the portion of the decree now under consideration is too indefinite in that it does not in sufficient detail advise the parties of their respective rights and powers. In general terms it marks out the field in which defendant and other companies of like character may function. It would be quite impossible to embody in a decree every minute detail which might or might not be within such field. Unless upon settling the decree in this court a more definite and satisfactory provision can be agreed upon by counsel this portion of the decree will stand.

As being incidental to the main issues presented on this appeal, the respective briefs contain discussion of other provisions of the decree entered in the circuit court. Defendant complains of that portion of the decree wherein it is enjoined:

"From soliciting law business from the public directly or indirectly and from furnishing to prospective testators or trustors the names of, and from recommending attorneys for the drafting of wills and trust instruments under which it acts or is to act as fiduciary and from advising testators and trustors concerning attorney fees for drafting such instruments."

It is urged that the quoted provision is too broad and that it will interfere with defendant's legitimate conduct of its business. We think there is no justification for such contention or apprehension if, as is to be assumed, the provision will be fairly construed. It is not a limitation of defendant's activities if such activities are within the exercise of the corporation's statutory powers. But to the extent it restricts defendant "from soliciting law business," or soliciting business for lawyers by recommendations or other inducements, the activity is wholly outside of defendant's corporate powers, and such conduct is violative of the spirit, if not the letter, of our statutory law. Act No. 328, § 410, Pub. Acts 1931; *Hightower* v. *Detroit Edison Co., supra.* We think defendant has no reason to complain of this provision as embodied in the decree.

By its appeal defendant has presented a question of practice, but by the terms of the decree which defendant proposes for entry in this court, the practice question appears to be waived and it will therefore be passed.

In its scope this opinion is confined to the rights and powers of defendant trust company and other like corporations. It is not to be construed as applicable to casual acts of private persons even though in the same field. In this connection see *Opinion of the Justices to the Senate, supra.*

Decree may be taken in this court modifying that entered in the circuit court in accordance herewith. Inasmuch as the questions presented are of public importance and neither of the appealing parties has fully sustained its position, no costs will be awarded.

Fead, C. J., and Wiest, Butzel, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.