STATE BAR ASSOCIATION OF CONNECTICUT ET AL. *v.* THE CONNECTICUT BANK AND TRUST COMPANY

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 107312

STATE BAR ASSOCIATION OF CONNECTICUT ET AL. *v.* HARTFORD NATIONAL BANK AND TRUST COMPANY

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 107313

Memorandum filed April 15, 1957.

*Wesley A. Sturges* and *Fleming James, Jr.,* both of New Haven, *Wallace R. Burke,* of Hartford, and *Hadleigh H. Howd,* of Winsted, for the plaintiffs.

*Gross, Hyde & Williams* and *Day, Berry & Howard,* both of Hartford, for the defendants.

PHILLIPS, J. In these two suits the plaintiffs seek to restrain the defendants, hereinafter referred to as the banks, from engaging in certain acts and practices which they claim constitute the illegal practice of law. The plaintiffs also seek a declaratory judgment as to whether or not these acts and practices constitute the unlawful practice of law and violations of §§ 7638 and 7641 of the General Statutes. The two suits will be treated together in this memorandum.

It should be borne in mind throughout this discussion that the choice of a criterion as to what constitutes the practice of law must be made from the standpoint of public protection, not from that of private advantage for either banks or lawyers. *Merrick* v. *American Security & Trust Co.,* (dis.) 107 F.2d 271, 282. The practice of law is restricted to natural persons who have been licensed upon the basis of established character and competence as a protection to the public against lack of knowledge, skill, integrity and fidelity. *Groninger* v. *Fletcher Trust Co.,* 220 Ind. 202, 207.

Paragraphs 6 to 21 of the complaints allege certain acts and practices of the banks as the basis for the plaintiffs' claim that they are illegally practicing law. These allegations of fact are virtually admitted by exhibit A and the answers to the amended motions for disclosure, exhibits B-1 and B-2, with certain qualifications not important to this decision.

From the evidence, including these exhibits, I find the following facts:

1. The defendants, by advertising and by distribution of literature, disseminate and give out, without charge, to their customers and prospective customers and the public, general information concerning (a) the application, scope and effect of various laws that are involved in estate planning, including federal income and gift tax laws, federal and state estate and succession tax laws, laws relating to trusts, and laws relating to the administration and disposition of decedents' estates; (b) the complexities of federal and state taxes and various means of minimizing liability for them; (c) the advantages and disadvantages of various means provided by law for the distribution of property, including the use of inter-vivos and testamentary trusts. The foregoing information is given out for the purpose of inducing people to name the banks as executors or trustees in wills or trust agreements. In some of the advertising and literature, an individual is told to consult his attorney on his specific situation and is informed that all wills and trust agreements must be drawn by such attorney.

2. The banks, through conferences with and occasional correspondence by officers of their trust departments, who sometimes are and sometimes are not attorneys, discuss with customers and prospective customers the matters enumerated in 1 (a)-(c), supra, for the purpose of inducing them to name the banks as executors or trustees in wills or trust agreements. The banks in so doing do not seek to give final advice as to what any individual should do, and urge the customers and prospective customers to consult their own attorneys on their specific situations. The banks do not take any compensation for such conferences and correspondence.

3. The banks, through their trust officers, who sometimes are and sometimes are not attorneys, review, at the request of testators or trustors, the

provisions of their wills and trust agreements, which have been drawn by outside counsel, in instances where the banks are named executors or trustees, or the testator or trustor has indicated that he is considering naming the banks to such a position, and advise them or their attorneys of necessary, proper or desirable changes. In all such cases, the trust officers urge the testators and trustors to consult their own attorneys, and any further instruments which may result from such review are drawn by such attorneys, not employees of the banks. The banks do not take any compensation for such reviews.

4. Probate of wills: The banks followed the practice in 1956 of preparing and filing application for the probate of wills where they were named as executors and of being represented at probate hearings by employees who sometimes were and sometimes were not attorneys, unless the banks considered that an uncertain or unclear legal issue was involved or that a controversy might arise. In this event they were represented by independent outside counsel employed by them as fiduciaries.

5. Hearings in Probate Court: During 1956 the banks followed the same practice in being represented at such hearings and proceedings in furtherance of their fiduciary administrations as is indicated in the preceding paragraph concerning the probate of wills, paragraph 4, supra.

6. Application for widow's allowances: The same practice was followed as is indicated in paragraph 4, supra.

7. Applications for the compromise of claims for or against the banks as fiduciary of estates of decedents or wards or trust estates: The same practice was followed as is indicated in paragraph 4, supra.

8. Claims of the banks themselves against the banks as fiduciaries: These were prepared and filed by employees of the banks with the banks as fiduciaries, and applications for approval of these claims were prepared and filed in the Probate Court in the manner indicated in paragraph 4, supra.

9. Accounts and returns of distribution: These were prepared and filed in the Probate Court, and the banks were represented at hearings for their approval in the same manner as indicated in paragraph 4, supra, regardless of whether any other party in interest was represented by outside counsel.

10. Preparing and filing federal tax returns and dealing with examiners of the internal revenue service, and preparing and filing state tax returns and dealing with agents of the state tax department in connection with admitting, denying or compromising liability for taxes claimed to be due the banks as fiduciaries: The same practice was followed as indicated in paragraph 4, supra. Here an additional requirement was made for employing independent outside counsel—that the amount in question warrants such employment.

11. Compromising claims of federal and state tax authorities against the banks as fiduciaries of decedents' and wards' or trust estates: The banks did this in the manner indicated in paragraph 4, supra, with the additional requirement stated in paragraph 10, supra.

The defendant Connecticut Bank and Trust Company in case No. 107312 served as fiduciary in 1956 in 1841 fiduciary administrations. In 16 of these, the bank retained independent outside counsel to compose or approve all the papers filed in the Probate Court and to appear and represent it at probate hearings and proceedings. In 450 (excluding the 16 mentioned above), it retained independent

outside counsel to render some legal services, but this number seems to have included services rendered long prior to 1956 in estates which were active in 1956. In case No. 107313, Hartford National Bank and Trust Company, defendant, the corresponding figures are 1517, 28 and 511. Out of these 1517 accounts, 284 were estates of decedents. In 71.8 per cent of these accounts (estates of decedents), independent outside counsel were used, most of whom were employed in real estate matters. Of the balance of the accounts, 1233, which were for trusts, guardianships, conservatorships, etc., the percentage where the bank employed lawyers was 27.2, but as above noted, this figure included lawyers employed prior to 1956 in trusts still active.

There were some further refinements in the testimony on this subject which need not be detailed here.

There are a great many legal problems, some of them of a complex nature, which arise in fiduciary administrations of estates of decedents. The following are illustrative: In the application of a will for probate, the questions of domicil and who are the heirs at law; in the inventory and appraisal of the estate, the problems of valuation of interests such as leasehold estates and remainder interests, what dividends and accrued interest are included, to whom the household furniture belongs; return of claims—which ones are properly presented and entitled to priority; the report to the state on transfers other than by will or laws of intestacy (Form E3, exhibit D) requires important legal determinations including concessions and nonconcessions of taxability of the items involved; determination of what are allowable deductions in the succession tax, and computation of tax; federal estate tax returns contain nineteen schedules, each of which has its legal problems, such as schedules of jointly owned prop-

erty, of marital deductions, transfers prior to death; preliminary and final accounts present legal problems; the distributions of estates present problems such as interest, payments in kind or in cash.

There is a considerable body of case law built up around the succession and transfer tax statutes of this state. Trust officers have frequent meetings with tax attorneys representing the state to compromise claims arising out of these laws. The questions which arise are more difficult to solve than title searching problems. At these conferences, it is seldom that independent outside counsel are present. Where the claim is contested in the Probate Court, however, during 1956 the banks have consistently been represented by outside independent counsel. On questions of taxability, it is a common thing for the trust officer to make decisions without consulting an attorney.

The defendant bank in case No. 107312 employs 200 in its trust department, six of whom are attorneys; in case No. 107313 the bank employs 200, of whom seven are attorneys.

In estate planning, the banks do not render specific advice as to what terms should be put in a will or trust. They tell the prospective customer that he must obtain an attorney to do this. The banks avoid so far as possible giving definite answers to legal questions such as descent and distribution, intestacy, etc. The object is to have the customer employ his own attorney to draw his will.

The charges made by the banks in fiduciary administrations are in accordance with a fixed schedule which has been in effect in this county for some time and is recognized by the Probate Court. There is no greater or additional charge when work is done by a lawyer-employee of the banks.

It will be noted from the above that the banks no longer draw wills and trust agreements for customers and prospective customers, but insist that these services be performed by outside independent counsel employed by the customer. There is thus removed from this case a practice which has been repeatedly disapproved by the courts. *Judd* v. *City Trust & Savings Bank,* 133 Ohio St. 81, 88, and cases cited.

The relevant portions of the statutes applicable to the case may be summarized as follows:

Section 7638 provides for the admission of attorneys by the Superior Court and that no other person than an attorney so admitted shall practice law or plead at the bar of any court of this state, except in his own cause. The substance of this section goes back in the laws of Connecticut to its colonial legislation. The words "practice law or" were added to the section in 1933 (Cum. Sup. 1935, § 1627c), but otherwise its very text has been in the General Statutes since 1875. Rev. 1875, p. 44, § 29.

Section 7641 provides that no person who has not been admitted as an attorney shall practice law or appear as an attorney at law for another, in any court of record in this state, or make it a business to practice *law, or appear* as an attorney for another in any such court, or make it a business to solicit employment for a lawyer, or hold himself out to the public as being entitled to practice law, or assume to be an attorney or counselor at law. There are penalties imposed for the violation of this section, the person who violates it is deemed in contempt of court, and the Superior Court is given jurisdiction to restrain a violation. This statute was enacted in 1927. Public Acts 1927, c. 159. In 1933 the words italicized were added. It is obvious that the purpose of the 1933 amendment was to forbid the per-

formance of any acts by persons not attorneys, in or out of court, commonly understood to be the practice of law. *Grievance Committee* v. *Payne,* 128 Conn. 325.

The defendant Connecticut Bank and Trust Company has certain express powers as set forth in General Statutes, § 5781, as amended by § 2648d of the 1955 Cumulative Supplement, the relevant powers being to act as guardian or conservator of the estate of any person, and to sell or mortgage any real estate held as such fiduciary; to act as trustee, receiver, executor, or administrator, and as such sell or mortgage any real estate held as such fiduciary. The grant of these powers was first made in 1913 and there has been no substantial change since then. Public Acts 1913, c. 194, § 8. There were legislative declarations of like power for banks and trust companies incorporated in special acts prior to 1913.

The defendant Hartford National Bank and Trust Company, a duly organized national banking association, and duly permitted by the federal reserve board so to do, may exercise one or more of the foregoing fiduciary offices, but under like terms and limitations as rule state banks. *Hamilton* v. *State,* 94 Conn. 648. It is authorized under the National Banking Act (12 U.S.C. § 248[k]) to act as personal representative of decedents' estates and of minors' and incompetents' persons and estates, to act as trustee of property held in trust, and otherwise to act generally in a fiduciary capacity.

There have been at least six cases decided by appellate courts involving the legality of practices of bank-fiduciaries: *Detroit Bar Assn.* v. *Union Guardian Trust Co.,* 282 Mich. 216 (1937); s.c., 282 Mich. 707 (1938); *Judd* v. *City Trust & Savings Bank,* 133 Ohio St. 81 (1937); *Merrick* v. *American*

*Security & Trust Co.*, 107 F.2d 271 (1939) ; *Groninger* v. *Fletcher Trust Co.*, 220 Ind. 202 (1942) ; *Hobson* v. *Kentucky Trust Co.*, 303 Ky. 493 (1946) ; *Arkansas Bar Assn.* v. *Union National Bank*, 224 Ark. 48 (1954).

These cases are thoroughly analyzed in the exhaustive and scholarly briefs of the plaintiffs and of the defendants. Most of the questions presented here have been involved in one or more of these cases, they are in conflict in certain respects, and the construction placed upon them by counsel for the respective parties in the instant cases differs. It is unnecessary to review these cases here. They will be cited from time to time in support of the principles which this court believes should be adopted in Connecticut.

A corporation cannot lawfully engage in the practice of law, nor can it do so indirectly through the employment of qualified attorneys. *Judd* v. *City Trust & Savings Bank,* 133 Ohio St. 81, 85.

At the outset, it is held that the criterion of whether the banks are engaged in the practice of law is not, and cannot be, the employment of outside independent counsel, as distinguished from the use of salaried employee attorneys. There can be no distinction between acts performed by the banks through their salaried attorneys and the same acts performed through outside counsel retained by the banks in a specific situation. In either case the attorney is employed by the bank and is acting for it. Both the permanently salaried lawyers of the bank and its ocassionally retained counsel represent of necessity primarily the bank. Salaried attorneys and outside counsel are subject to like obligations to the bar and to the public. This view is supported by the majority opinion in *Merrick* v. *American Security & Trust Co.,* 107 F.2d 271, 278, in which Justice Vin-

son, later to become chief justice of the United States Supreme Court, participated, and also by the minority opinion; id., 282; it is also supported by *Groninger* v. *Fletcher Trust Co.,* 220 Ind. 202, 206, and *Judd* v. *City Trust & Savings Bank,* 133 Ohio St. 81, 91. No authority has been cited or argument advanced to the contrary by the plaintiffs which is convincing to the court. In so far as *Arkansas Bar Assn.* v. *Union National Bank,* 224 Ark. 48, holds otherwise, it is not followed by this court. The inescapable conclusion is that if the banks have been engaging in the illegal practice of law in matters where they have been using their salaried employees who are attorneys, they would be doing likewise if they employed outside independent counsel in those matters.

The primary question before the court is whether the acts of the banks do in fact constitute the practice of law. It would be difficult, if not impossible, to make an all-inclusive definition of the term "practice of law." *Grievance Committee* v. *Payne,* 128 Conn. 325. Several definitions are recited in *Detroit Bar Assn.* v. *Union Guardian Trust Co.,* 282 Mich. 216, 220. For the purposes of these cases, it is only necessary to observe that every definition assumes, or contemplates or states, that the services rendered, to constitute the practice of law, must be for others. Thus in *In re Duncan,* 83 S.C. 186, 189, the court, in defining the practice of law, speaks of the management of actions and proceedings "on behalf of clients," and, in general, "all advice to clients and all action taken for them in matters connected with the law." The *Groninger* case, supra, states (p. 207): "The practice of law involves advising or rendering services for another." In speaking of matters which are held to be the illegal practice of law by a corporation, in 5 Am. Jur. 263, § 3, there is mentioned the maintenance of a legal department to give free

legal advice, the furnishing of legal services for members of a protective association, and the maintenance of a collection agency, "but not . . . the retainer of an attorney on an annual salary basis to attend to and conduct a corporation's own legal business."

The distinction between acts performed by an individual or corporation incidental to his or its own authorized business and those performed for others is pointed up in the *Merrick* case, supra, 274, 275, by the citation of a number of illustrative adjudicated cases. Thus, an unlicensed individual may not engage in the business of negotiating the settlement of personal injury or workmen's compensation claims, a corporation may not engage in the business of contracting to furnish, by an attorney, legal advice and consultation on all business, personal and private matters, or advertise that it will bring dispossess actions up to the point of suit; a bank may not, through lawyers it employs, transact legal business for its customers; a trust company may not engage in the business of drawing wills and trust agreements; a corporation may not make a business of collecting claims owned by others, determining whether and when to sue, etc. On the other hand, a real estate broker may prepare deeds and mortgages, so long as the papers grow out of and are intimately connected with his business transactions; the Missouri Supreme Court has distinguished between casualty insurance companies which settle claims made by third persons against their insureds and companies which hold themselves out to the public as being in the business of settling claims; *Liberty Mutual Ins. Co.* v. *Jones,* 344 Mo. 932, 965; one not a member of the bar may draw deeds, mortgages, notes and bills of sale when these instruments are incident to transactions in which such person is interested, provided no charge is made.

This distinction is emphasized in *Bump* v. *Barnett,* 235 Iowa 308, 313, cited several times in the plaintiffs' brief. In this case the court held that a collector who took assignments of claims for collection, conducted actions thereon in the lower courts, and employed counsel to represent him on assigned claims in the district court was illegally practicing law. The court says: "Undoubtedly, one might . . . engage in the business of buying claims as investments and might take assignments of them . . . and maintain actions thereon in his own name. But when he does not purchase the claims and only takes colorable assignment of them so he may render or cause to be rendered legal service *to others,* and holds himself out as engaged in such practice, it is a quite different matter." (Italics supplied.)

Countless other examples could be cited of everyday legal transactions properly carried on by an individual or corporation whom they concern without the assistance of an attorney. No one would dispute a building contractor's drawing his own contracts without the assistance of a lawyer, an industrial concern's entering into collective bargaining agreements with a union without a lawyer, an insurance company's selling insurance policies, which are contracts, with no assistance from lawyers. An individual may, of course, appear in court pro se and conduct his own case. The very statutes invoked by the plaintiffs make this distinction: "[N]o other person than an attorney, so admitted, shall practice law or plead at the bar of any court of the state, *except in his own cause."* § 7638. "No person who has not been admitted as an attorney . . . shall practice law or appear as an attorney . . . *for another,* in any court of record in this state . . . ." § 7641. (Italics supplied.)

Since to constitute the practice of law, the acts must be performed on behalf of another, the vital

question for determination in the instant cases is whether the acts performed by the banks and summarized above are performed for themselves, as incidental to their duties as fiduciaries, or, on the other hand, from their very nature are performed on behalf of others.

Executors, administrators, trustees and the like are charged with nondelegable duties. For example, an executor must exhibit the will for probate, § 6962; a fiduciary must prepare and file an inventory of the estate; Cum. Sup. 1955, § 2932d; a conservator must prepare and file an inventory and manage the estate; § 6878; and a guardian must do likewise; §§ 6854, 6860. Banks as executors and administrators have numerous statutory duties in connection with succession taxes. They are personally liable not only for federal estate taxes but also for all other federal taxes, if other debts are paid before such taxes. 31 U.S.C. § 192. They are liable as individuals for the payment of post-mortem claims arising out of the operation of a decedent's business. *Hewitt* v. *Sanborn*, 103 Conn. 352. Other instances of equal importance could be mentioned. Fiduciaries must use due diligence and prudence in the management of the estate, *Reiley* v. *Healey*, 122 Conn. 64, 71, and for a breach of that duty are answerable in the Probate Court. *American Surety Co.* v. *McMullen*, 129 Conn. 575, 581. Fiduciaries have such a direct legal interest in an estate that they may now appeal from removal as fiduciary. Cum. Sup. 1955, § 2942d.

It is argued by the plaintiffs that fiduciaries, in the administration of estates, are acting not for themselves but for the estate, for the creditors and beneficiaries. An estate is not a legal entity. It is neither a natural nor artificial person, but is merely a name to indicate the sum total of the assets and liabilities of a decedent or incompetent. *Estate of Bright* v.

*Western Air Lines,* 104 Cal. App. 2d 827; *Arnold* v. *Groobey,* 195 Va. 214, 220. Hence the fiduciary can hardly be said to be acting for the estate. While the fiduciary is a fiduciary of the creditors and also represents the interests of beneficiaries; *Hewitt* v. *Sanborn,* 103 Conn. 352, 378; he is not their agent. He does not derive his powers from them, and he is not subject to their control. *O'Connor* v. *Chiascione,* 130 Conn. 304, 307. Often the rights of beneficiaries and creditors are conflicting. The fiduciary could not represent both in the true sense of the word. "Representation" of creditors and beneficiaries by a fiduciary merely means that in many instances he represents their interests and that many actions may be taken or suits brought by or against a fiduciary without those beneficially interested being made parties. Primarily, executors and administrators are court officers, subject to control, discipline and removal for good cause. *Judd* v. *City Trust & Savings Bank,* 133 Ohio St. 81, 90. Their relationship to others is well expressed in this case (p. 91): "While it is true that a fiduciary, whether a trust company or a natural person, is answerable to creditors, distributees, beneficiaries, heirs, *cestuis que trustents,* wards, and the like, in that the estate must be administered with due regard for their interests, that is not destructive of the proposition that the fiduciary has a very real, vital and substantial interest to conserve on his or its own account—a direct and primary interest, if you please. Responsibility for the proper execution of the trust rests solely on the fiduciary."

It is hard to conceive how a bank or trust company could exercise any of the powers given it by state and federal statute if it could not engage in the acts and practices enumerated above. It cannot be an executor without probating wills, filing inventories, accounts and distributions, handling tax matters and

the like. It cannot be an adequate estate manager without giving advice on the management of estates, and the chief opportunity to do so is just before the drafting of the estate instrument. *Merrick* v. *American Security & Trust Co.,* 107 F.2d 271, 276. It would be strange indeed if the legislature conferred upon it these powers in the face of a statute or common-law rule which denied it the right to exercise them. These statutes have not been challenged as unconstitutional in invading the court's judicial powers by authorizing acts constituting the practice of law. If they had been, the contention could not be upheld. *Detroit Bar Assn.* v. *Union Guardian Trust Co.,* 282 Mich. 216, 234.

The case of *Grievance Committee* v. *Payne,* 128 Conn. 325, relied upon by the plaintiffs, is not in conflict with these conclusions. That case did not turn, as do the present ones, upon whether the acts of the defendant were done on behalf of himself or on behalf of others. In the *Payne* case the acts were clearly performed for another for a fee and, being legal in nature, constituted the practice of law.

It follows that the banks, in performing the acts enumerated above, are acting primarily for themselves in the proper exercise of their functions as fiduciaries under the state and federal statutes cited, and are not engaged in the practice of law, except in the one respect which will now be discussed.

The practice of the banks in permitting, in some instances, lay employees to represent them in probate proceedings and hearings is improper. Such representation should always be by an attorney, either a salaried employee attorney or outside counsel as the bank may elect in the particular situation. While an individual may appear in the courts in proper person, a corporation, because of the very fact of its being a corporation, can appear only by

attorney, regardless of whether it is interested in its own corporate capacity or in a fiduciary capacity. *Detroit Bar Assn.* v. *Union Guardian Trust Co.,* supra, 219. The decisions of other states are in accord with this principle, as admitted in the defendants' brief. *Bennie* v. *Triangle Ranch Co.,* 73 Colo. 586. A corporation is an artificial person and therefore cannot personally appear; only members of the bar have audience in the courts, and corporations cannot be members of the bar. *New Jersey Photo Engraving Co.* v. *Carl Schonert & Sons, Inc.,* 95 N.J. Eq. 12. "[A] corporation is incapable of personal appearance and must appear by attorney . . . ." *Culpeper National Bank, Inc.* v. *Tidewater Improvement Co.,* 119 Va. 73, 79. "Since a corporation cannot practice law and can only act through the agency of natural persons, it follows that it can appear in court on its own behalf only through a licensed attorney. It cannot appear by an officer of the corporation who is not an attorney . . . ." *Laskowitz* v. *Shellenberger,* 107 F. Sup. 397, quoting 9 Cal. Jur. Sup. § 15, p. 448 (Rev. 1949).

The defendants invoke General Statutes § 7794 and the case of *Union* v. *Crawford,* 19 Conn. 331 (1848) in support of their contention that this state is excepted from the majority rule. The statute is entitled "Municipal corporations may sue and be sued." It provides that counties, towns, societies, communities and corporations may prosecute and defend civil actions, may appoint agents to appear in their behalf and may employ attorneys in such actions. The plaintiffs question whether the statute applies to private corporations. Regardless of this, the word "agents" must now be interpreted to refer to attorneys at law. The *Union* case, supra, pertained to a selectman appearing before a justice of the peace in a legal proceeding on behalf of the town, and the court decided (p. 337), "not without some

hesitation," that he might do so. The case turned upon whether the selectman could appear by virtue of his general powers, and without the delegation of any special authority for the purpose. There was no argument concerning, or consideration given to, the propriety of one not an attorney appearing in court, and it is doubtful if, in the light of modern conditions, our Supreme Court of Errors would consider this one-hundred-year-old case a precedent in the instant cases. If laymen could appear on behalf of the banks in the Probate Court in one matter, they could appear in all matters. If they could appear in the uncontested probate of a will, they could appear in a contested will case. If they could represent the banks in the Probate Courts, they could do so in all courts, for example, in the trial of an action for the wrongful death of the decedent. Such a principle would open wide the door for other private corporations to appear by laymen in our courts. For example, surety insurance companies might claim the right through their nonlawyer employees to try negligence actions against their insureds. Such practices would, of course, far transcend the "ordinary and incidental" duties appurtenant to the statutory powers of these corporations which have been held not to constitute the practice of law. The unlikelihood of responsible corporations pursuing such a course does not affect the inadvisability of establishing a rule which would make it possible for them to do so.

The power to regulate, control and define the practice of law reposes in the judicial department. *Grievance Committee v. Payne,* 128 Conn. 325; *Opinion of the Justices,* 289 Mass. 607, 612, and cases cited. Legislative regulation of the practice of law is unconstitutional only when it tends to impair the proper administration of the judicial function. *Detroit Bar Assn.* v. *Union Guardian Trust Co.,* 282

Mich. 707, 713; *Clark* v. *Austin,* 340 Mo. 467. A construction of § 7794 which would permit a lay agent of a private corporation to appear in court in its behalf would render the statute invalid as an invasion of the judicial function.

In conclusion, the banks' activities set forth in the facts found, supra, 1-11, and the court's rulings thereon, are summarized as follows: In giving general information to customers and prospective customers on such matters as federal and state tax laws, intervivos and testamentary trusts, wills, etc., as well as reviewing existing wills, where the banks take no compensation and urge the customers to consult their own attorneys on their specific situations and have them draw any necessary instruments, the banks are not engaged in the unauthorized practice of law but are performing these acts as incident to their authorized fiduciary business. *Merrick* v. *American Security Trust Co.,* 107 F.2d 271, 276, 277; *Groninger* v. *Fletcher Trust Co.,* 220 Ind. 202, 206.

In preparing and filing in the Probate Courts various applications, petitions, accounts, inventories and distributions pertaining to estates and trusts, conservatorships and guardianships, the banks are performing the ordinary and incidental services relative to trusts assumed by them under the statutes authorizing them to act as fiduciaries. *Detroit Bar Assn.* v. *Union Guardian Trust Co.,* 282 Mich. 216, 228; *Judd* v. *City Trust & Savings Bank,* 133 Ohio St. 81, 91; *Groninger* v. *Fletcher Trust Co.,* 220 Ind. 202, 205. These acts may be performed by lay employees as well as lawyer employees. Under our informal probate procedures, it is not necessary that the mechanical act of signing and filing these papers be done by an attorney employee as required in the second *Detroit Bar Assn.* opinion, 282 Mich. 707. The public interest is not endangered by the practices of the banks in the preparation and filing of these

papers through laymen, and the practices do not constitute the illegal practice of law.

The banks should appear in proceedings and hearings in the Probate Courts only by attorney, who may be a salaried employee or outside independent counsel. *Detroit Bar Assn.* v. *Union Guardian Trust Co.,* 282 Mich. 707; *Merrick* v. *American Security & Trust Co.,* 107 F.2d 271, 275.

The work of preparing and filing tax returns, dealing with state and federal tax authorities and appearing in proceedings before them may properly be done by regular employees of the banks, either lawyers or laymen. *Merrick* v. *American Security & Trust Co.,* supra, 278; *Groninger* v. *Fletcher Trust Co.,* supra, 206.

The practice of the banks in carrying on all these activities through lay or lawyer employees except as noted does not conflict with the public interest and does not constitute the illegal practice of law or a violation of statute.

Judgment may enter for the defendants in each case on the claim for an injunction from engaging in the acts and practices of the defendants as found by the court, except that an injunction may issue against each defendant, under penalty of $10,000, restraining it from appearing and being represented in proceedings and hearings in the Probate Courts by lay employees.

On the second claim for relief, a declaratory judgment may enter that none of the acts and practices of the defendants as found by the court, either singly or in combination, constitute the unlawful practice of law or a violation of §§ 7638 and 7641 of the General Statutes, except that their appearing and being represented in proceedings and hearings in the Probate Courts by lay employees does constitute the illegal practice of law and a violation of these statutes.