**CHESTER RESIDENTS CONCERNED FOR QUALITY LIVING,**
Petitioner,

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1994.
Decided Feb. 17, 1995.
Reargument Denied April 17, 1995.
Petition for Allowance of Appeal
Granted May 16, 1995.

Jerome Balter, for petitioner.

Mark L. Freed, Asst. Counsel, for respondent.

Jane E. Leopold–Leventhal, for intervenor, Thermal Pure Systems, Inc.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

SMITH, Judge.

Chester Residents Concerned For Quality Living (Petitioners) petition for review of the order of the Environmental Hearing Board (Board) which granted motions for summary judgment filed by the Department of Environmental Resources (DER) and Thermal Pure Systems, Inc. (Thermal Pure), and denied the cross-motion for summary judgment filed by Petitioners and dismissed their appeal. The issues raised for review are whether DER violated what is commonly known as the Infectious and Chemotherapeutic Waste Disposal Act (Act), Act of July 13, 1988, P.L. 525, *as amended*, 35 P.S. §§ 6019.1—6019.6, when it promulgated the Infectious and Chemotherapeutic Waste Plan (Plan) and excluded all commercial facilities with technology other than incineration; and whether DER violated the Act when it issued a permit to Thermal Pure for the construction and operation of an infectious waste autoclave and transfer facility which involves the truck-to-truck transfer of waste without processing. For the following reasons, the Board's order is reversed.

I.

On July 22, 1993, DER issued a permit to Thermal Pure for the construction and operation of a commercial facility in the City of Chester, Delaware County, for sterilizing infectious waste by means of steam autoclaving, which uses superheated steam to kill bacteria and pathogens in the waste. Infectious wastes are those contaminated by disease-producing microorganisms which may harm or threaten human health, *see* 25 Pa. Code § 271.1; and the Plan is intended to distribute commercial infectious waste facilities across Pennsylvania. Under the Plan, a commercial facility for "incineration or other disposal" of infectious waste is one placed in a location remote from where the infectious waste is generated. *See also* 25 Pa.Code § 271.1 ("Commercial infectious or chemotherapeutic waste facility" defined in part as a facility that processes such waste not generated primarily onsite).

The permit allowed a facility capacity of 403 tons per day, of which 288 tons per day of medical infectious waste are to be sterilized by autoclave. Thermal Pure intends to serve Philadelphia and surrounding counties in Pennsylvania and New Jersey, but would also serve hospitals and medical centers in Maryland, Delaware, Virginia, Washington, D.C., and the New York City area. Upon autoclaving the waste, it would be taken to an approved incinerator or landfill for disposal. The permit was issued under the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101—6018.1003.

In August 1993, Petitioners filed an appeal with the Board claiming, inter alia, that DER's issuance of the permit violated Section 3(a) of the Act, 35 P.S. § 6019.3(a), because it failed to comply with the requirements of the Plan. Petitioners later amended their appeal to limit its scope to the single issue of whether the permit violated Section 3(a) of the Act. The Board thereafter denied Petitioners' request for supersedeas and motion for reconsideration, directed DER and Thermal Pure to file motions for summary judgment, and gave Petitioners the opportunity to file a cross-motion for summary judgment. On February 24, 1994, the Board granted the motions for summary judgment filed by DER and Thermal Pure, denied Petitioners' cross-motion, and ruled that autoclave and transfer facilities are not governed by the Plan.

■ The Board concluded that DER was not required to review the permit appli-

cation within the context of the Plan because the activities intended to be carried on were all pre-disposal in nature, whereas the Plan pertains only to commercial incinerators; and since autoclaving did not involve incineration of the infectious waste, permitting and operation of such facilities is regulated under the SWMA and its attendant municipal waste regulations. Further, pursuant to a "moratorium" imposed in Section 3 of the Act, permits for incineration or disposal facilities must await adoption of the Plan and must then be consistent with the Plan; as such, facilities for pre-disposal activities are not subject to this moratorium, and DER could continue to issue permits for them during the time when the Plan and the revised regulations were in process. Petitioners appealed to this Court.[1]

## II.

Petitioners argue that DER's Plan violates the Act because the Plan fails to address the siting and regulation of commercial sterilization facilities and instead pertains only to commercial incineration facilities: therefore, the permit issued to Thermal Pure violates the Act because it is not consistent with a proper Plan. Petitioners further contend that the Plan has produced an absurd result in that the largest possible incineration facility built pursuant to the Plan could have a capacity only one-tenth as large as Thermal Pure's sterilization facility with an allowable capacity of 288 tons per day.

The record reveals that the total quantity of infectious and chemotherapeutic wastes generated throughout Pennsylvania is 26,500 tons per year or approximately 73 tons per day. DER estimated that of that total, 98 percent is classified as infectious waste. As published by DER, the Plan creates three infectious waste zones—eastern, central and western—and is designed to regulate com-

mercial facilities for the "incineration or other disposal" of infectious wastes. Any commercial incineration facility regulated under the Plan is required to obtain at least 70 percent of the infectious waste from generators within the zone where the facility is located.

The Thermal Pure facility is located in the City of Chester which is within the eastern zone; the total amount of infectious waste generated in the eastern zone is 13,335 tons per year of which 5,800 tons per year are "incinerated or otherwise disposed" at the sites where the waste is generated; and 7,535 tons per year or 20.6 tons per day must be transported from the places of generation to commercial facilities for "incineration or other disposal." If all of the infectious waste generated in the eastern zone were shipped to a single facility for incineration, the maximum capacity of such a facility, under the 70 percent requirement, could be no larger than 10,765 tons per year or 29.5 tons per day.

Under the permit issued to Thermal Pure, the sterilizing capacity of its facility is 288 tons per day, or 105,000 tons per year. Thermal Pure's capacity is therefore approximately four times the total quantity of all infectious waste generated in Pennsylvania. Moreover, Thermal Pure's Chester facility capacity of 288 tons per day is nearly ten times the maximum allowed by the Plan for incineration or other disposal.

■ DER and Thermal Pure contend that the Plan does not consider or regulate autoclave facilities because the Act addresses only incineration and disposal of infectious waste, whereas autoclaving is pre-disposal and is not covered by the Act. DER and Thermal Pure assert that the plain language of the Act excludes autoclaving activities from DER's consideration in formulating the

---

1. This Court's scope of review of an Environmental Hearing Board decision is limited to a determination of whether an error of law has been committed, whether constitutional rights have been violated, or whether findings of fact are unsupported by substantial evidence. *Starr v. Department of Environmental Resources*, 147 Pa.Commonwealth Ct. 196, 607 A.2d 321 (1992). A grant of summary judgment by the Board is proper where the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Empire Coal Mining & Dev., Inc. v. Department of Environmental Resources*, 150 Pa.Commonwealth Ct. 112, 615 A.2d 829 (1992), *appeal denied*, 535 Pa. 640, 631 A.2d 1011 (1993).

Plan, an assertion rejected by this Court. Of particular concern to this Court are the legislative findings contained in Section 1 of the Act, 35 P.S. § 6019.1:

> The General Assembly finds that the legitimate public health concerns of the Commonwealth require the review and adoption of regulations providing standards for the *collection, transportation, processing, storage and incineration or other disposal* of infectious and chemotherapeutic wastes. The public health, safety and welfare will be served by the development and implementation of a comprehensive, Statewide plan and regulation addressing the present and future needs of this Commonwealth with regard to the incineration and disposal of infectious and chemotherapeutic wastes.... The General Assembly also finds that the future construction and operation of facilities proposed to be used for the incineration and disposal of infectious or chemotherapeutic wastes should comply and conform with the aforementioned regulations and Statewide plan. The General Assembly further finds that infectious and chemotherapeutic wastes by their very nature cannot be recycled and that such wastes are best managed at the place of generation with a minimum of transportation through this Commonwealth and exposure to the public and that *such wastes are best managed, processed and disposed of* and rendered harmless by means of current state-of-the-art high-temperature incineration. (Emphasis added.)

Section 2 of the Act, 35 P.S. § 6019.2, further details the requirements of the comprehensive plan, regulations, and standards called for in the legislative findings. Section 2(b)(1) provides that DER shall propose regulations governing "the collection, transportation, processing, storage and incineration and disposal of infectious and chemotherapeutic wastes and the siting of commercial infectious and chemotherapeutic waste management facilities." Section 2(a) sets forth the requirements of the Plan in which DER must address, inter alia, the siting and distribution of facilities for the "incineration or other disposal" of infectious or chemotherapeutic wastes and the "projected need for additional commercial facilities, *including* commercial incinerators." (Emphasis added.)

### III.

■ Upon review of the plain language of the Act, this Court is convinced that the legislature intended the Act to apply not solely to "incineration or other disposal" [2] of infectious and chemotherapeutic wastes, but as well to the collection, transportation, processing, and storage of those wastes. It is a basic principle of statutory construction that all words and provisions of a statute must be given effect because the legislature is not presumed to have intended them as mere surplusage. *Patton v. Republic Steel Corp.*, 342 Pa.Superior Ct. 101, 492 A.2d 411 (1985). DER's interpretation ignores the fact that the legislative mandate clearly encompasses a "cradle-to-grave" consideration of and accounting for infectious and chemotherapeutic wastes. Although the Act—and specifically Section 2(a)—in several instances mentions only "incineration or other disposal," this nonetheless does not limit its scope to incineration. Instead, when read as a whole, the Act evinces a legislative concern for a plan and regulations addressing all phases of infectious and chemotherapeutic waste handling.

■ Underscoring this result is the observation that given the express legislative findings, DER's construction results in the absurd situation where the Plan would limit a permit for a commercial infectious waste incinerator to 29.5 tons per day capacity, but allow Thermal Pure to build a sterilization facility with an allowable capacity of 288 tons per day which, as noted above, far exceeds the total quantity of infectious waste generated in the entire Commonwealth. A construc-

---

2. "Disposal" is defined in Section 103 of the SWMA, 35 P.S. § 6018.103, as:

> The incineration, deposition, injection, dumping, spilling, leaking, or placing of solid waste into or on the land or water in a manner that the solid waste or a constituent of the solid waste enters the environment, is emitted into the air or is discharged to the waters of the Commonwealth.

tion which fails to give effect to all provisions of a statute or which achieves an absurd or unreasonable result must be avoided. *Wilson v. Central Penn Indus., Inc.*, 306 Pa.Superior Ct. 146, 452 A.2d 257 (1982).

For DER to focus solely on incineration as the basis for the Plan construes the Act too narrowly. This Court therefore holds that the Act does not exclude autoclaving activities from DER's consideration in formulating the Plan. Because the Plan addresses only the siting of incineration facilities and explicitly excludes all other infectious waste facilities, it is in violation of the Act, and the permit issued thereunder to Thermal Pure is therefore invalid. Accordingly, the Board's order is reversed, and Petitioners' cross-motion for summary judgment is granted. The remaining issues raised by Petitioners need not be addressed.

### ORDER

AND NOW, this 17th day of February, 1995, the order of the Environmental Hearing Board is reversed, and the cross-motion for summary judgment filed by Chester Residents Concerned For Quality Living is granted.