[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The documents provided reflect the following facts. On November 7, 1991, Michael Mansi of West Haven, Connecticut, died intestate, leaving two heirs, Raymond Mansi (Mansi) and Lucille Celentano (Celentano). On March 24, 1992, the defendant, Brian T. Fischer (defendant)[1], an attorney at law, was appointed by the West Haven probate court to be administrator of the estate of Michael Mansi.
Among the assets of the estate was a piece of real estate known as 7 Donna Lane, West Haven (premises). The plaintiff, Elias Jaser (plaintiff), a creditor of Mansi, obtained a judgment of CT Page 3439 default against Mansi in the amount of $24,845.90 on February 14, 1992. On June 29, 1992, the plaintiff filed a judgment lien on the West Haven Land Records against the premises.
The heir, Celentano, offered to purchase the premises from the estate. The defendant filed an application in the West Haven probate court to sell the real estate to her. The court granted the application and ordered the posting of a $125,000 bond in conjunction with the approval. The defendant posted the bond, issued by the co-defendant, National Grange Mutual Insurance Co., on September 10, 1992.
Rocco Tirozzi, the plaintiff's attorney, and the defendant negotiated the limited release of the judgment lien for the purpose of clearing the land records of the plaintiff's judgment lien to facilitate the sale of the premises to Celentano. Tirozzi prepared a statement for the limited release of the judgment lien, dated October 15, 1992, which provided, in relevant part: "The said proceeds [from the sale of the premises] are to be held by Attorney Brian T. Fischer . . . in a special fund to be distributed as the Premises would have been if not ordered sold. This instrument is being executed, delivered, and recorded for the sole purpose of clearing the encumbrance of the Judgment Lien for Lucille Celantano so she can obtain title free and clear of its effect, but with no effect as to said special fund proceeds." (Defendant's exhibit A) On the same day, the defendant addressed a letter to Tirozzi, which stated that "I will not disburse any funds to Raymond Mansi without the consent of you and Atty. Parnoff who represents Raymond Mansi." (Defendant's exhibit C) On October 16, 1992, Tirozzi prepared a letter, addressed to the defendant, which the defendant signed and returned to Tirozzi. (Defendant's exhibit B) The letter stated, in relevant part, that "[y]ou hereby represent said funds [out of the sale proceeds] to be a net amount more than enough to pay my judgment lien in full, and that my judgment lien has priority over all other claims and liens against the premises. . . . Further, you agree to satisfy said judgment lien from said net funds as soon as your Administrative duties allow you to (, as agreed between Attorneys Tirozzi and Parnoff.)" (Id.) On October 16, 1992, the premises were sold and the limited release, together with the administrator's deed, was delivered to the buyer's attorney.
On January 5, 1993, the defendant filed a final account of his administration of the estate with the West Haven probate court. (Defendant's exhibit D) On February 8, 1993, Judge E. Michael CT Page 3440 Heffernan of the West Haven probate court approved the account and released the bond posted by the defendant. (Defendant's exhibits E I)
On March 5, 1993, the Superior Court, Housing Session, Riddle,J., vacated the default judgment obtained by the plaintiff against Mansi on the ground that the court did not have personal jurisdiction over Mansi because Mansi had not been properly served with the summons and complaint. (Defendant's exhibit F) Tirozzi, the plaintiff's attorney, claimed that on March 22, 1993, he faxed a letter to the defendant, informing the latter that on that day he had filed a motion to extend time to appeal the court's vacating order and that he had enclosed a copy of the motion with the fax letter. (Plaintiff's exhibit 1) The fax letter requested the defendant to "continue holding funds pursuant to that judgment at least until the court decides the motion to extend time to appeal as enclosed." (Id.)
On March 26, 1993, Laurence V. Parnoff, attorney for the heir, Mansi, faxed and hand delivered a letter to the defendant demanding payment of Mansi's share of estate funds. He attached a copy of the court's vacating order to the letter. Parnoff further informed the defendant in the letter that the "Court clerk has this date confirmed that no Appeal has been filed, and no Court orders have been entered extending the appeal period, which expired on March 25, 1993." (Defendant's exhibit G) On April 2, 1993, Parnoff sent via fax and certified mail another letter to the defendant, copy to the West Haven probate court, demanding again immediate payment of Mansi's share of estate funds. (Defendant's exhibit H) The letter contained an express warning: "This letter will serve to put you on notice that my client is holding you personally responsible for any damages or losses incurred for delays or failures to make payments of the distribution of his share of the Estate. Please be put on notice of my client's claim against you for interest for the delays in making payments to date, and for additional damages for any prejudice or loss he should suffer as a result of additional delay or failure in making payment." (Id.) The defendant paid Mansi's distributive share to Parnoff on April 7. The co-defendant, National Grange Mutual Insurance Company, did not participate in the administration of the estate of Michael Mansi.
The plaintiff appealed the court's decision to vacate his default judgment, but the Appellate Court affirmed the decision to vacate. See Jaser v. Mansi, 33 Conn. App. 933, 636 A.2d 880
CT Page 3441 (1994). On July 21, 1997, the West Haven probate court, E.Michael Heffernan, J., granted the plaintiff's petition to bring suit on bond against the defendant. (Plaintiff's exhibit A) On September 3, 1998, the Superior Court, DeMayo, J., denied the appeal by the defendant of the decree of the West Haven probate court. On October 8, 1998, the defendant instituted the present action.
On January 12, 1999, the plaintiff filed a revised four count complaint. Count one alleges that the defendant breached his fiduciary obligations and duties as administrator of the estate for failing to hold the sale proceeds of the premises in a special fund for the plaintiff notwithstanding the court's decision to vacate the default judgment underlying his lien against Mansi. Count two alleges that the defendant breached the agreement, as presented by the two letters he signed, to pay the plaintiff from the sale of the premises. Count three alleges that the defendant intentionally made false representations to the plaintiff in order to induce the plaintiff to deliver the limited release of the judgment lien. Count four alleges that the defendant by his conduct became a constructive trustee of the special fund from the sale proceeds of the premises for the benefit of the plaintiff.
Summary judgment may be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book, § 17-49; see Connellv. Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1990). "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. Urban DevelopmentCommission, 158 Conn. 364, 378, 260 A.2d 596 (1969). "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Internal quotation marks omitted.) Id., 378-79. A "material fact" is a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578,573 A.2d 699 (1990).
"In ruling on a motion for summary judgment, the court's CT Page 3442 function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Serrano v. Burns,248 Conn. 419, 424, 727 A.2d 1276 (1999). In Connecticut, a "directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis omitted; internal quotation marks omitted.) Miller v. United Technologies Corp. ,233 Conn. 732, 752, 660 A.2d 810 (1995).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue."Home Ins. Co. v. Aetna Life Casualty, 235 Conn. 185, 202,663 A.2d 1001 (1995). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Practice Book, § 17-46.
"It is not enough, however, for the opposing party merely to assert the existence of such a disputed fact. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) Peerless Insurance Co. v.Gonzalez, 241 Conn. 476, 481, 697 A.2d 680 (1997). To defeat a motion for summary judgment, the nonmoving party "must recite specific facts . . . which contradict those stated in the [moving party's] affidavits and documents. . . ." (Internal quotation marks omitted.) Real Estate Auction, Inc. v. Senie,28 Conn. App. 563, 567, 611 A.2d 452 (1992). A party's conclusory statements, "in the affidavit and elsewhere," may not "constitute evidence sufficient to establish the existence of disputed material facts." Gutpa v. New Britain General Hospital, 239 Conn. 574,583, 687 A.2d 111 (1996). "[U]nadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact on a motion for summary judgment." CT Page 3443New Milford Savings Bank v. Roina, 38 Conn. App. 240, 245,659 A.2d 1226, cert. denied, 235 Conn. 915, 655 A.2d 609 (1995). "The issue must be one which the party opposing the motion is entitled to litigate under [its] pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment." (Internal quotation marks omitted.) Id.
"If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (Internal quotation marks omitted.) 2830 Whitney Avenue Corp. v.Heritage Canal Development Associates, Inc., 33 Conn. App. 563,569, 636 A.2d 1377 (1994). When a party moves for summary judgment "and there [are] no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof." Heyman AssociatesNo. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756, 795,653 A.2d 122 (1995).
Count One: Breach of Fiduciary Duties
It is undisputed that the judgment lien and any security interest secured by it became unenforceable once the underlying default judgment was vacated. The dispute between the parties is not about any material facts, but about the legal issue whether the defendant had a fiduciary obligation to the plaintiff on the basis of his written agreement to hold the sale proceeds in escrow for the benefit of the plaintiff and whether the defendant should not have released the sale proceeds until the plaintiff had exhausted his appeal of the court's decree to vacate the default judgment.
The defendant argues that the letters provided by him in October, 1992, presumed the validity of the default judgment and the subsequent judgment lien in favor of the plaintiff, and he did not doubt, and had no reason to doubt, their validity at that time. The letters were intended to protect such security rights as that judgment and judgment lien provided, no more and no less. Once the judgment was vacated, the judgment lien became invalid and unenforceable as well, and there was no remaining security interest to be recognized. In addition, the defendant argues that because the default judgment was vacated prior to his release of the sale funds, he distributed the sale proceeds exactly as he was statutorily obligated under General Statutes § 45a-166
CT Page 3444 (b).[2] Finally, the defendant argues that the administrator of an estate has no fiduciary obligation to a creditor of an heir of the estate. In this case, since the plaintiff was neither an heir nor a creditor of the estate, but merely a creditor of an heir, the defendant argues that he had no fiduciary obligation to the plaintiff.
The plaintiff's argument rests primarily on equitable grounds. He argues that because he was under no obligation to provide the limited release of the judgment lien he did so only upon the defendant's express agreement to hold the sale proceeds in a special fund for the plaintiff. According to the plaintiff, this case is really about direct voluntary agreements and representations by the defendant and the defendant's breach of the express agreement. Therefore, he need not rely on any implied fiduciary obligations. The plaintiff further argues that the defendant breached his fiduciary obligation when he released the sale proceeds at a time when he knew that the plaintiff had filed a motion to extend time to appeal the vacating of the default judgment.
In his memorandum of law in opposition, the plaintiff fails to rebut the defendant's argument that he had no fiduciary obligation to a creditor of an heir. The plaintiff cites no authority to support his proposition that an administrator of an estate had a fiduciary obligation to the creditor of an heir of the estate. The existing statutory and case law clearly indicates the contrary. "The beneficiaries of [the administration of a decedent's estate] are the decedent's creditors, the tax authorities, heirs, legatees, devisees, and, in a few cases, the state." G. Wilhelm, Settlement of Estates in Connecticut 2d (1999) § 2.14, citing State Bar Association v. Connecticut Bank Trust Co., 20 Conn. Sup. 248, 131 A.2d 647 (1957).
The determination of this issue in the present case hinges on whether an administrator of estate owes any sort of duty to an heir's creditor. "[T]he determination of whether a duty exists between individuals is a question of law." Jaworski v. Kiernan,241 Conn. 399, 404, 696 A.2d 332 (1997). In the present case, the plaintiff alleges that the defendant administrator owed a fiduciary duty to hold the sale proceeds of the premises in escrow for him and breached the duty in releasing the fund to the heir instead. A fiduciary is defined as "an executor, administrator, trustee, conservator or guardian." General Statutes § 45a-199. "Although executors and administrators are CT Page 3445 not trustees, they occupy a position in may respects analogous [to trustees] . . . and many of the rules determining the powers and duties of trustees apply to them. . . . One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the cestui que trust. He must exclude all selfish interest and also all consideration of. . . thirdpersons." (Emphasis added; citations omitted; internal quotation marks omitted.) Hall v. Schoenwetter, 239 Conn. 553, 559,686 A.2d 980 (1996). Similarly, an administrator must remain loyal to the estate that he is administering and "must not act out of self-interest or for the interests of parties other than theheirs, distributees, and creditors of the estate." (Emphasis added.) See id. (referring to the plaintiff executrix in that case); see also Weiner v. D'Acunto, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 163643 (August 12, 1998, Lewis, J.) (holding that the defendant "co-administrator would bear a legal duty similar to that of the executrix in Hall since both an executrix and administrator are considered fiduciaries pursuant to § 45a-199"), citing Hall v.Schoenwetter, supra, 239 Conn. 558-59. Under General Statutes § 45a-199 Hall and Weiner, the administrator of an estate does not have fiduciary obligations to any third person other than the heirs, distributees and creditors of the estate and is prohibited from acting for the interest of any third person. See Hall v.Schoenwetter, supra, 239 Conn. 559; Weiner v. D'Acunto, supra, Docket No. 163643. In the present case, it is undisputed that the plaintiff was not an heir, distributee or creditor of the estate; he was merely a creditor of an heir, a third person unrelated to the administration of the estate. It follows therefore that the defendant had no fiduciary obligations to the plaintiff.
"The final step in the duty injury . . . is to make a determination of the fundamental policy of the law, as to whether the [defendant's] responsibility should extend to such results." (Citations omitted; internal quotation marks omitted.) Jaworskiv. Kiernan, supra, 241 Conn. 405-406. It would be a bad policy of law to require an administrator to consider the claims of an heir's creditors, in addition to those of the beneficiaries and creditors of the estate. See The Jewish Home for the Elederly ofFairfield County, Inc. v. Cantore, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 155519 (February 13, 1998, D'Andrea, J.) (21 Conn. L. Rptr. 396) (holding that resident's conservator owes no duty to third-party creditor nursing home for alleged negligence in managing CT Page 3446 resident's estate under Connecticut estate law and that "it would be a bad policy to require a conservator to consider the needs and desires of a ward's creditors, in addition to the needs and desires of the ward herself"). To hold otherwise would create a conflict of competing demands for the fiduciary's duties and loyalties.
Furthermore, the probate court, and the administrator of an estate under its supervision, are prohibited from deciding general equitable issues not in connection with, or incidental to, the administration of the estate. See Dept. of SocialSciences v. Saunders, 247 Conn. 686, 708, 724 A.2d 1093 (1999). "The probate court is a court of limited jurisdiction and has only such powers as are given it by statute or are reasonably to be implied in order to carry out its statutory powers." Id. "A Probate Court judge is not a chancellor. His only equity powers are those which are incidental to, and connected with, the settlement of a particular estate." (Internal quotation marks omitted.) McConnell v. Beverly Enterprises-Connecticut, Inc.,209 Conn. 692, 697, 553 A.2d 526 (1989). "Furthermore, the Probate Court may not adjudicate complex legal questions that are subject to the broad jurisdiction of a general court of equity. . . . Thus, the Probate Court lacks essential powers necessary to handle independent equitable actions. . . ." (Internal quotations marks omitted.) Id., 698. "The situation . . . in which the Probate Court may exercise equitable jurisdiction must be one which arises within the framework of a matter already before it, and wherein the application of equity is but a necessary step in the direction of the final determination of the entire matter."Palmer v. Hartford National Bank Trust Co., 160 Conn. 415, 429,279 A.2d 726 (1971).
The limitations on the equitable powers of the probate court apply all the more to the administrator of an estate. An administrator is an appointee of the probate court and operates under the supervision of the probate court. See Brownell v. Union New Haven Trust Co., 143 Conn. 662, 671, 124 A.2d 901 (1956); see also Zampsky's Appeal from Probate, 6 Conn. App. 521, 527,506 A.2d 1050 (1986) ("an administrator . . . owes his very existence as such to his appointment by the Probate Court");State Bar Association v. Connecticut Bank Trust Co., supra,20 Conn. Sup. 263 ("Primarily, executors and administrators are court officers, subject to control, discipline and removal for good cause."). CT Page 3447
In addition, the plaintiff in the present case would have had no standing before the probate court to assert his judgment lien against the estate, even if valid, because he was neither creditor, distributee or heir of the estate, and the probate court would have had no subject matter jurisdiction over an heir's dispute with a third-person creditor, which did not arise out of the settlement and distribution of the estate. See Palmerv. Hartford National Bank Trust Co., supra, 160 Conn. 429; see also Urrata v. Izzillo, 1 Conn. App. 17, 19-20, 467 A.2d 943
(1983). The plaintiff's claim is directed both at the defendant and the surety on the probate bond. As such, the cause of action is governed by General Statutes § 45a-144 (a), which provides that "[a]ny person claiming to be aggrieved by the breach of a probate bond, as representative of the estate in connection with which the bond was given, or in his own right or in the right of himself and all others having an interest in the estate, may bring an action in the Superior Court or may apply to the Court of Probate in which the bond was given to recover for the breach in his own name. Accordingly, in order to prevail on the claim advanced in count one, the plaintiff must demonstrate that he was "aggrieved" by the defendant's "breach of a probate bond."
While there is no direct case law in Connecticut that addresses the issue whether a creditor of an heir can be considered "aggrieved" under § 45a-144 (a), the Appellate Court has held that a creditor of an heir cannot be "aggrieved" within the meaning of General Statutes § 45a-186, which governs the appeal of probate orders, because he has only an "indirect" interest in the estate. See Urrata v. Izzillo, supra, 1 Conn. App. 20. InUrrata a creditor of an heir appealed the Superior Court's dismissal of her appeal from an order of the probate court admitting a will disinheriting that heir. The Urrata court holds that a creditor of an heir cannot be "aggrieved" under 45a-186, and therefore has no standing to appeal a probate order, on the basis of the following reasoning: "If the will were set aside, the plaintiff would not directly take any part of the estate. Any rights she claims are not rights in the estate itself; her interest derives strictly through a third person. Under these circumstances, she is not aggrieved." Id. The logic of the holding suggests that a party who has merely an "indirect" interest in the administration of an estate, such as an creditor of an heir of the estate, does not have standing to challenge the administration of a decedent's estate. In the case at bar, even if the premises were not sold to the heir, Celentano, and even if the plaintiff's judgment lien were valid, the plaintiff could not CT Page 3448 have a claim against the estate for the title of the premises or the sale premises of the premises because, as being not a beneficiary or creditor of the estate, he could not directly take any part of the estate. He would have to bring an independent suit against his debtor, Mansi, or a foreclosure action against the premises to satisfy his judgment lien or security interest after the settlement or distribution. "The requirement that, in order to establish aggrievement, the interest which is adversely affected be `direct' is of long-standing and unbroken lineage. See Maloney v. Pac, 183 Conn. 313, 321, 439 A.2d 349 (1981);Beard's Appeal, 64 Conn. 526, 533, 30 A. 775
(1894)." Id., 19-20.
The same logic and public-policy line drawing that the court undertakes in Urrata with regard to § 45a-186 should apply to claims against a fiduciary's probate bond under § 45a-144. As the defendant rightly points out, it would be incongruous to find that a different aggrievement standard applies to the two statutes. Otherwise, a disgruntled creditor who fails in an appeal under § 45a-186 could simply restyle his claim as a breach of fiduciary duty under the probate bond and file suit under § 45a-144. A creditor of an heir should not be allowed to circumvent the aggrievement standard set down in Urrata by filing a claim against the probate bond under § 45a-144. The plaintiff here is not "aggrieved" within the meaning of § 45a-144.
It should be noted that the security arrangement between the parties for the judgment lien was not strictly in connection with, or incidental to, the settlement or distribution of the estate because the judgment lien, even if valid and asserted, would not have affected the settlement or distribution of the premises. There was no question that the heir, Celentano, was entitled to the premises under the court order of sale of the premises to her. If the plaintiff had not waived the judgment lien, he would have got a continuing security interest attached to the premises sold. The security arrangement between an heir of the estate and her creditor should have been a private matter unrelated to the administration of the estate. It was not strictly necessary for the defendant administrator to agree to the security arrangement with the third person creditor/plaintiff because it was not an integral part of the settlement or distribution of the estate. See Hall v. Schoenwetter, supra,239 Conn. 559; State Bar Association v. Connecticut Bank Trust Co., supra, 20 Conn. Sup. 262-263; G. Wilhelm, supra, § 2.14. Though the defendant may have acted in good faith manifestly for the CT Page 3449 interest of the heir, he may have acted in excess of his strict fiduciary duties in agreeing with the third-person creditor to hold the sale proceeds in escrow for the latter and agreeing that the latter's judgment lien had "priority over all other claims and liens against the premises."[3] (See defendant's exhibit B.) See Hall v. Schoenwetter, supra, 239 Conn. 559 (the administrator must exclude consideration of any matter that is not related to the settlement and distribution of the estate).
It has been long been held under Connecticut case law that the probate court and the administrator under its supervision must disregard the interest of a creditor of an heir of the estate in the settlement and distribution of the estate. See McConnell v.Beverly Enterprises-Connecticut, Inc., supra, 209 Conn. 697;Brownell v. Union New Haven Trust Co., supra, 143 Conn. 671
(1956); Phelan v. Elbin, 84 Conn. 208, 212, 79 A. 187 (1911);Moriarty v. Donahue, 82 Conn. 308, 311-12, 73 A. 763 (1909);Petroleum Conversion Corp. v. Vaughan, 140 F. Sup. 369, 371-72 (D. Conn. 1955). In Moriarty Bridget Donahue died intestate and left five heirs, who were her children. One of the heirs, Mary, the defendant in that case, was appointed administrator of the estate. Another heir, Thomas, mortgaged his entire undivided one-fifth interest to one Downey after his mother's death. Thomas died and Downey foreclosed against Thomas' administrator and heirs and won the foreclosure action. The administrator sold all the real restate of the decedent pursuant to an order of the probate court. Because Thomas had mortgaged away his entire interest in his mother's estate and lost it through foreclosure by Downey, Mary, the administrator, refused to pay to the estate of Thomas his one-fifth share of the sale proceeds. The Superior Court ruled on appeal that the administrator had no right to refuse to distribute Thomas' share in his mother's estate to his own estate as ordered by the probate court, despite the mortgage and foreclosure. Affirming the trial court's decision, theMoriarty court held,
 [T]he Court of Probate had no power to inquire into the equities existing between Thomas and Downey. . . . That court cannot inquire as to what conveyances have been made, or attempted to be made, by the distributees during the settlement of the estate. Had this real estate not been sold by the administratrix, one-fifth part of it must have been set to Thomas, regardless of the mortgage and foreclosure. The Court of Probate could not go into an inquiry as to what rights Downey, or any third party, had acquired in it since the death CT Page 3450 of Bridget. . . . Such inquires are for another court. Much less can the administratrix assume to decide between them. Her duty is to obey the order of the Court of Probate for a distribution, passed upon her application. She was not a party to the foreclosure suit, and Downey is not a party to this proceeding. His rights are still for another court to determine. The proceeds of the real estate are to be distributed as the real estate wold have been distributed had the sale not been made; that is, according to the rights of the parties at the death of Bridget. Moriarty v. Donahue, supra, 82 Conn. 311-12.
The holding of Moriarty, cited with approval in Brownell v.Union New Haven Trust Co., supra, 143 Conn. 671-672, expressly prohibits what the plaintiff would have the defendant to do in the present case, that is, withholding distribution of the sale proceeds in order to protect the claim of an heir's creditor. SeeMoriarty v. Donahue, supra, 82 Conn. 311-12. The plaintiff would not have standing to press his claim before the probate court. He would have to press his claim in equity in another court, a court of general jurisdiction, such as the Superior Court. See Palmerv. Hartford National Bank Trust Co., supra, 160 Conn. 431;Phelan v. Elbin, supra, 84 Conn. 208, 212-13.
The plaintiff claims that the sale proceeds constituted a special fund for his benefit, as contemplated and provided for in the written agreements between the parties, and the defendant was obligated to deliver the fund to the plaintiff. The plaintiff has cited no authority to buttress his claim, but bluntly urges the court not to be "further misled by defendants' comments regarding a "special fund theory' of the plaintiff." (Plaintiff's memorandum of law, p. 3.)
In Phelan v. Elbin, supra, 84 Conn. 208, the successor litigation case to Moriarty v. Donahue, supra, 82 Conn. 308, the parties interpleaded in Superior Court their competing claims to the $4,000 held by a mortgagee bank. One Elbin had purchased the real property sold by Mary, the administrator of Bridget's estate in Moriarty, and mortgaged it to the Thomaston Savings Bank. Mary had agreed that Elbin could hold out $4,000 of the purchase price until the encumbrance by Downey, the creditor of Thomas, a heir of the estate in Moriarty, resulting from Thomas' mortgage which Downey foreclosed could be cleared from the record. The bank in turn withheld the $4,000 from the proceeds of the mortgage loan to Elbin. After the administrator of Thomas' estate, Moriarty, CT Page 3451 secured her judgment in Moriarty, it remained unsatisfied because Mary and her surety were hopelessly insolvent. Phelan has succeeded Mary Donahue as the administrator of Bridget's estate. Moriarty and Downey both claimed the $4,000 held by the bank. ThePhelan case was the suit brought in the Superior Court to determine the rights of all the parties. It was treated by the parties and the trial and appellate courts as an interpleader action. See Phelan v. Elbin, supra, 84 Conn. 209-10.
In his memorandum of decision, the trial judge said that the money should be paid over to Phelan, the administrator of Bridge's estate, who in turn should turn it over to the heir as ordered by the probate court. See Petroleum Conversion Corp. v.Vaughan, supra, 140 F. Sup. 371. Since the action was one in equity in the nature of an interpleader, the judge stated,
 I see no reason why I should not avoid circuity in proceeding and cut across-lots, so to speak, and put this money where it equitably belongs. If it should be given to the plaintiff Phelan, Administrator of Bridget, he should pay it to Nellie Donahue Moriarty, Administratrix of Thomas. Since there are no debts against Thomas' estate that are not satisfied she in turn should pay it to the defendant Downey in satisfaction of his mortgage, where in my judgment it equitably belongs. It should therefore be paid directly to it.
See id., 371-72 (quoting trial judge's memo in Phelan). The judgment ordered the bank to pay all the money to Downey, as his mortgage debt exceeded the $4,000 held. The Supreme Court found no error in the trial court's action. The court, in discussing the then version of General Statutes § 45a-166 (b), said,
 The statute treats this fund as real estate, directing that it shall be distributed as real estate would have been; this must mean to the same persons, and subject, as between them, to the same incumbrances, conveyances, and equities to which the real estate would have been subject, had there been no conversion, and the real estate itself had been distributed. It cannot have been the intention, by this statute, to turn over the fund to heirs who have sold and received full value for their shares, or to thwart attaching creditors who have perfected lien upon such heirs' interest in the land.
Phelan v. Elbin, supra. 84 Conn. 214. CT Page 3452
The plaintiff in this case has cited nothing to support his special fund claim, but the plaintiff in Petroleum ConversionCorp. v. Vaughan, supra, 140 F. Sup. 369, cited the above language from Phelan to support a claim similar to the one in the present case. The plaintiff in Petroleum sought permission to sue on a probate bond for a sum of money given by the defendant, Vaughan, in connection with an order to sell real estate entered by the probate court. The plaintiff had earlier won a monetary judgment against the defendant and filed a judgment lien. Meanwhile, the defendant was appointed administrator of the estate of his wife, who had died intestate. As surviving spouse, the defendant had an undivided one-third interest in his wife's estate, which included certain real estate. The probate court ordered the sale of this realty to pay the estate's debts. The administrator defendant filed a probate bond in connection with the sale, as required by the law. At the time of the sale of the realty, the defendant had actual notice of the judgment lien filed by the plaintiff, but nevertheless distributed the balance of the sale proceeds to himself and the two other heirs after paying the debts of the estate in compliance with the order of distribution of the probate court. The probate court denied the plaintiff's petition to bring an action on the bond filed by the defendant, and the plaintiff sought permission from the federal district court and invoked the authority of Phelan to support his special fund theory that "Vaughan, administrator, had an affirmative legal duty, once he had knowledge of the judgment lien, to pay the distributive share of Vaughan, as heir, to the judgment creditor, the plaintiff, rather than to himself." Id., 372. The district court disagreed with the plaintiff's construction of Phelan and denied the applicability of its holding to the plaintiff's case. See id.
Specifically, the district court held that Phelan did not overrule Moriarty, and noted that it cited the latter with approval. The court wrote,
 [The language from Phelan] upon which the plaintiff relies must be construed in the light of both the Phelan and [Moriarty] cases, the types of action they were and the parties involved. The Supreme Court [in Phelan] was in effect saying that for the purpose of an interpleader action, where a court of general and equitable jurisdiction has before it all of the rights of all of the parties in interest in the fund, the statute could not have the effect of barring the purchaser of an heir's interest or an heir's attaching creditor from his remedy in an CT Page 3453 interpleader action or of preventing the court from following through in such an action all the legal relations of all of the parties in the matter before it to achieve a final determination of the ownership of the fund. The Phelan case is not, however, authority for the proposition that an administrator who has actual or constructive notice of the interest of an heir's creditor in the heir's distributive share of the estate which he is administering, is under the affirmative duty to protect that creditor's interest, absent any process such as foreign attachment or garnishment which has brought the administrator into proceedings instigated by the creditor against the heir in a court other than the Probate Court. . . . To hold otherwise would involve the Probate Court which is statutory and of limited jurisdiction in the determination of matters beyond its powers and make impossibly complex the settlement of estates. The administrator has no affirmative duty to bring an interpleader action.
Id.
The present case is distinguishable from Phelan in crucial respects. Unlike Phelan, the present case is not an interpleader action for the determination of the parties' respective right to the fund held by a third party, rather than by an estate fiduciary. As the district court points out, Phelan does not stand for the proposition that an administrator has an affirmative duty to hold the sale proceeds in a special fund for the benefit of an heir of the estate. See id. The Connecticut case law has long held that the probate court and the administrator under its supervision cannot consider the equitable claim of a third person other than the creditors and beneficiaries of the estate. See Dept. of Social Sciences v.Saunders, supra, 247 Conn. 708; Hall v. Schoenwetter, supra,239 Conn. 559; McConnell v. Beverly Enterprises-Connecticut, Inc., supra, 209 Conn. 697; Palmer v. Hartford National Bank TrustCo., supra, 160 Conn. 429; Brownell v. Union New Haven TrustCo., supra, 143 Conn. 671; Moriarty v. Donahue, supra,82 Conn. 311-12. Even if the judgment lien and the security agreement between the parties were valid in this case, the defendant did not have an affirmative duty to hold the sale proceeds in a special fund and deliver it to the plaintiff. Even if the lien and the agreement were valid, the plaintiff could only appear before a court of general jurisdiction and broad equitable power to claim the fund in equity, for instance, in an interpleader action. See Phelan v. Elbin, supra, 84 Conn. 215; PetroleumCT Page 3454Conversion Corp. v. Vaughan, supra, 140 F. Sup. 372. Because the case at bar is not before the court for the determination of the parties' respective right to a fund held by a third party, and it is not an interpleader action by either party, the plaintiff does not have a cause of action as a matter of law under the special fund theory.
All the above discussion is predicated on the assumption that the judgment lien was valid. Even so, the plaintiff does not have a cause of action. But there was no valid judgment lien to speak of at the time the defendant distributed the sale proceeds under the probate law because the underlying default judgment had been vacated before the distribution and both parties were aware of its invalidity. In view of the invalidity and unenforceability of the judgment lien in the present case, the Phelan holding is not even relevant because the plaintiff could not even bring an interpleader action in a court of general jurisdiction and equitable power.
The default judgment, upon which the lien was based, was vacated for lack of personal jurisdiction. "As applied to a court, the word "jurisdiction' means the power to hear and determine a cause." Samson v. Bergin, 138 Conn. 306, 309,84 A.2d 273 (1951); Koennicke v. Maiorano, 43 Conn. App. 1, 25,682 A.2d 1046 (1996). "[T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with service, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) Kimv. Magnotta, 249 Conn. 94, 101-102, 733 A.2d 809 (1999). "A court is without power to render a judgment if it lacks jurisdiction of the parties or of the subject matter, one or both. In such cases, the judgment is void, has no authority and may be impeached." Koennicke v. Maiorano, supra,43 Conn. App. 26. "[E]verything done under the judicial process of courts not having jurisdiction, is, ipso facto, void." (Internal quotation marks omitted.) Id., 25, citing Marshall v. Clark, 170 Conn. 199,205, 365 A.2d 1202 (1976). "[A] provision of a judgment that exceeds the jurisdiction of a court is necessarily void and cannot be remedied merely by the lapse of time. "Such a judgment is void ab initio and is subject to both direct and collateral attack.' Broaca v. Broaca, 181 Conn. 463, 467, 435 A.2d 1016
(1980); Robertson v. Robertson, 164 Conn. 140, 144, 318 A.2d 106
(1972)." Pinder v. Pinder, 42 Conn. App. 254, 258, 679 A.2d 973
(1996). CT Page 3455
In this case, because the court did not have personal jurisdiction over Mansi when it render the default judgment, the judgment was void ab initio and could not be remedied merely by the lapse of time. See Id. As a result, the plaintiff's judgment lien based on the default judgment became invalid and unenforceable because "everything done under the judicial process of courts not having jurisdiction, is, ipso facto, void." SeeKoennicke v. Maiorano, supra, 43 Conn. App. 25.
Finally, the plaintiff argues that the defendant breached his fiduciary obligation when he released the sale proceeds at a time when he knew that the plaintiff had filed a motion to extend time to appeal the vacating of the default judgment. This argument has no merit. The defendant could not have breached a fiduciary duty where there was none. The plaintiff cites Connecticut Bank Trust Co. v. Winters, 225 Conn. 146, 59-60, 622 A.2d 536 (1993), to support his argument that "the decision as to when the trial court's judgment vacating the judgment lien was a final one was for the Connecticut Appellate Court to decide, not Attorney Fischer." (Plaintiff's memorandum of law, p. 2.) The cited authority, however, does not support the plaintiff's argument that the defendant breached a fiduciary duty for not waiting for the plaintiff to exhaust his appeal of the vacating of the default judgment. On the contrary, it supports the defendant's argument that he breached no duty in not waiting for the plaintiff's exhaustion of his appeal because the Appellate Court sustained on appeal the trial court's vacating judgment in Jaserv. Mansi, 33 Conn. App. 933. "In Preisner, we enunciated a test for determining if a trial court judgment is a `final judgment' despite a subsequent appeal: `If the trial court's judgment is sustained [on appeal], or the appeal dismissed, the final judgment ordinarily is that of the trial court. If, however, there is reversible error, the final judgment is that of the appellate court.'" Connecticut Bank Trust Co. v. Winters, supra, 225 Conn. 159-60, citing Preisner v. Aetna Casualty Surety Co., 203 Conn. 407, 415, 525 A.2d 83 (1987). In this case, the outcome of the appeal confirmed that the trial court's vacating judgment was a final judgment that had rendered the judgment lien invalid and unenforceable. Therefore, the plaintiff has no standing to challenge the defendant's release of the sale proceeds on the basis of the defendant's reliance on the final judgment that had rendered the lien void and null.
Furthermore, the defendant was obligated to release the fund to CT Page 3456 the rightful beneficiaries of the estate under probate law and procedure. Rule 6.13 of the Connecticut Probate Practice Book specifically provides that "upon allowance of the account, distribution shall be made by the fiduciary in accordance with such schedule within sixty days after the date of such allowance, unless otherwise ordered by the Court before distribution upon motion of an interested party found by the Court to have been timely made under the circumstances." The plaintiff had filed no motion to stay the release of the sale proceeds, and he would have no standing before the probate court because he was not an "interested" party under Connecticut case law. See Urrata v.Izzillo, supra, 1 Conn. App. 19-20. In addition to his statutory obligation, the defendant would be held liable if he withheld distributive shares of an estate from beneficiaries or creditors of the estate when distribution was due. See Hartford-ConnecticutTrust Co. v. United States Fidelity Guaranty Co.,105 Conn. 230, 234, 135 A. 44 (1926) ("The bond [the executor] gave covered [his] obligation . . . properly to distribute the funds received from the sale of the real estate, and the surety upon the bond would be liable for his failure to do so, even though the account filed by him had been approved before the defalcation."), citingMoriarty v. Donahue, supra, 82 Conn. 311 ("the refusal of the administratrix to distribute [to an heir his distributive share] . . . was a breach of the bond"). In the present case, the heir Mansi twice demanded that the defendant immediately distribute to him his distributive share of the estate and gave notice that he would hold the defendant personally liable for unduly withholding the distribution. In view of the strict fiduciary obligations, as well as the invalidity of the judgment lien (the invalidity being not even necessary for the distribution), there is no doubt that the defendant acted properly in distributing the fund to an heir of the estate.
The plaintiff has essentially conceded that he could not rely on the theory of breach of fiduciary duties to press his claim. He admits in his memorandum of law that the case is really about the defendant's express agreement and his detrimental reliance on the agreement, so that he "need not rely on any implied fiduciary obligations." (See plaintiff's memorandum of law, p. 3.) Because the defendant did not have fiduciary obligations to a creditor of an heir and may not withhold the distributive share due to a heir of the estate in favor of the plaintiff as a creditor of the heir, even if the judgment lien were valid, it is submitted that the plaintiff does not have a cause of action on the claim of breach of fiduciary obligation and the defendant is entitled to CT Page 3457 judgment as a matter of law. In addition, there is no genuine issue as to any material fact. Therefore, even if viewing the evidence in the light most favorable to the plaintiff, the motion for summary judgment should be granted as to count one. See Practice Book § 17-49; Connell v. Colwell, supra, 214 Conn. 246;Miller v. United Technologies Corp. , supra, 233 Conn. 752.
Count Two: Breach of Contract
The plaintiff, after repeating allegations of count one, further claims under count two that the defendant breached the express written agreements to pay the plaintiff what the heir, Mansi, owed him. The purported agreements are the two letters the defendant signed and delivered to the plaintiff in October, 1992. (See defendant's exhibits B and C.) The plaintiff argues that although the defendant was not expected to ignore subsequent judicial action vacating the default judgment, upon which the judgment lien was based, he should have created a special fund on account of the agreements and brought an interpleader action so that the plaintiff could collect on the fund. In addition to this legal argument, there is an equitable argument that implies that the agreement should be treated as a quasi contract as well. The plaintiff claims that he has detrimentally relied on the agreement: but for the agreement he could have pursued other options, such as left the judgment lien on the premises "stalling the sale." The plaintiff has cited no authority in support of either the legal or the equitable argument.
The defendant argues that there was no agreement that he would ignore subsequent judicial action and protect the plaintiff from his failure to preserve his defective judgment. In addition, the defendant argues that the letters on their face were not an agreement to pay the plaintiff because the letters anticipated, and were conditioned on, mutual consent between the attorneys for the plaintiff and the heir, respectively, that the defendant administrator would pay the sale proceeds directly to the creditor plaintiff.
First, the purported agreement, even if otherwise valid, is not enforceable because "contracts of private parties cannot vary obligations imposed by law." See Rosnick v. Aetna Casualty Surety Co., 172 Conn. 416, 424, 374 A.2d 1076 (1977). Because the probate law and procedure imposed strict fiduciary obligations on the defendant to exclude all consideration of interests of parties other than the heirs, distributees, and creditors of the CT Page 3458 estate; see Hall v. Schoenwetter, supra, 239 Conn. 559; he could not insulate himself by the duties imposed by law by making a private arrangement with others. See Panaroni v. Johnson,158 Conn. 92, 104, 256 A.2d 246 (1969) (holding that because the housing code imposed duties upon both the landlord and the tenant, "neither can insulate himself from the duties imposed by law by making private arrangement with others").
Second, the purported agreement, even if not illegal or against public policy, is however invalid due to lack of identical understanding of, or mutual consent to, its terms or conditions. "To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . If the minds of the parties have not truly met, no enforceable contract exists." (Citations omitted; internal quotation marks omitted.) L R Realty v. ConnecticutNational Bank, 53 Conn. App. 524, 534-35, 732 A.2d 181, cert. denied 250 Conn. 901, 734 A.2d 984 (1999). "To create a contract, acceptance must be unequivocal. . . . Where terms for changing the legal relations between two parties are offered by one party to another, those terms must be explicitly, fully and unconditionally accepted, to effect such change of relations and constitute a binding contract." (Citations omitted; internal quotation marks omitted.) Leigh v. Smith, 138 Conn. 494, 496,86 A.2d 567 (1952). "For a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense." (Internal quotation marks omitted.) Herbert S.Newman Partners v. CFC Construction Ltd. Partnership,236 Conn. 750, 761-62, 674 A.2d 1313 (1996).
A review of the two letters in question shows that the parties did not have identical understanding of, or mutual consent to, the terms or conditions of the purported contract. In the letter dated October 15, 1992, the defendant wrote to Tirozzi, attorney for the plaintiff: "Please be advised that I will not disburse any funds to Raymond Mansi without the consent of you and Atty. Parnoff who represents Raymond Mansi." In the letter prepared by Tirozzi, returned and signed by the defendant, dated October 16, 1992, the defendant inserted a clause, signed with initials, "as agreed between Attorneys Tirozzi Parnoff," at the end of the sentence prepared by Tirozzi that you agree to satisfy said CT Page 3459 judgment lien from said net funds as soon as your Administrative duties allow you to [insertion]." The defendant inserted a specific condition to the terms of the offer by the plaintiff, which read in the context plainly meant that he would deliver the sale proceeds directly to the plaintiff only if both the heir and his creditor agreed to this direct payment. By adding this condition precedent to the contemplated direct release of the fund to the plaintiff, the defendant changed a key term of the purported agreement and effectively rejected the offer presented in the letter from the plaintiff's attorney, dated October 16, 1992. There is no evidence that the plaintiff had explicitly, fully and unconditionally accepted the material variation of the purported agreement. Therefore, there was no agreement between the parties because there was no identical understanding, or mutual consent to, the terms and conditions of the agreement. SeeHerbert S. Newman Partners v. CFC Construction Ltd.Partnership, supra, 236 Conn. 761-62; Leigh v. Smith, supra,138 Conn. 496.
Finally, the purported agreement became invalid when its underlying consideration failed. "To be enforceable, a contract must be supported by valuable consideration. . . . [I]n the absence of consideration an executory promise is unenforceable."Connecticut National Bank v. Voog, 233 Conn. 352, 366,659 A.2d 172 (1995). "Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." State National Bank v. Dick, 164 Conn. 523,529, 325 A.2d 235 (1973). For a contract to be enforceable, "[m]utual promises must be capable of performance, and the performance of a promise must be possible." Lebowitz v. McPike,157 Conn. 235, 246, 253 A.2d 1 (1968). "[A] failure of consideration . . . would be a complete legal defense to an action on the contract itself" (Internal quotation marks omitted.) Id., 244. The consideration in the purported agreement in the present case was supposed to be the detriment sustained by the plaintiff in having partially waived a supposedly valid judgment lien in exchange for a benefit to his debtor in order to "facilitate" the sale of the premises to an heir. The consideration failed as soon as the court entered a final judgment vacating the plaintiff's judgment.
Thus, the defendant did not breach the alleged agreement because there was no valid agreement for failure of conformity with probate laws, failure of identical understanding of, or mutual consent to, the terms of the alleged agreement, and CT Page 3460 failure of consideration.
The plaintiff has also asserted a restitutionary claim based on unjust enrichment, or quasi contract claim under this count. "Unjust enrichment applies wherever justice requires compensation to be given for property or services under a contract, and no remedy is available by an action on the contract. 5 Wihiston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain the benefit which has come to him at the expense of another." (Internal quotation marks omitted.)Meany v. Connecticut Hospital Assn., Inc., 250 Conn. 500, 511,735 A.2d 813 (1999).
In the present case, there is no allegation that the defendant himself or the estate was unjustly enriched at the expense of the plaintiff, and there is nothing on record to support the plaintiff's quasi contract theory. On the contrary, the defendant has introduced enough evidence to show that he distributed the sale proceeds to an heir entitled to it under probate law and procedure and pursuant to the order of distribution of the probate court.
Because the second count fails as a matter of law and there is no genuine issue of material facts, the motion for summary judgment must be granted as to that count. See Practice Book §17-49; Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116
(1990); Miller v. United Technologies Corp. , supra,233 Conn. 752; Home Ins. Co. v. Aetna Life Casualty, supra, 235 Conn. 202
("party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue"); Heyman Associates No. 1 v. Insurance Co. ofPennsylvania, supra, 231 Conn. 795.
Count Three: Fraudulent Misrepresentation
The plaintiff characterizes the two letters from the defendant as his written representations that he would not distribute the sale proceeds without the consent of the plaintiff's attorney, Tirozzi. (See defendant's exhibits B and C.) The plaintiff asserts a fraudulent representation claim, alleging that the defendant knew, or should have known, that the representations were false and that he made those false representations to induce CT Page 3461 the plaintiff to waive the judgment lien.
"The essential elements of a cause of action in [fraudulent misrepresentation] are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury. . . . All of these ingredients must be found to exist; and the absence of any one of them is fatal to a recovery. . . . Additionally, [t]he party asserting such a cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as `clear and satisfactory' or `clear, precise and unequivocal.'" (Citations omitted; internal quotation marks omitted.) Citino v. Redevelopment Agency, 51 Conn. App. 262,275-76, 721 A.2d 1197 (1998). "[A] plaintiff asserting a claim under [the fraudulent misrepresentation theory] must first prove a false statement or false representation on the part of the defendant." Id., 276.
The plaintiff has not properly alleged that the defendant made any fraudulent misrepresentation. The two letters purported to be the parties' agreement facially mean that the defendant would not release the fund without the mutual consent and agreement between the attorneys for the plaintiff and the heir, Mansi. Plainly, the letters do not say what the plaintiff construes them to say, that the defendant would not release the fund without the (unilateral) consent of the plaintiff's attorney. The plaintiff, being not a beneficiary or creditor of the estate, did not and could not have a veto power over the mandatory distribution of the fund under probate law and procedure, and the defendant had not made the agreement as taken by the plaintiff contrary to his fiduciary obligations and probate laws. Because the plaintiff's construction of the two letters is contrary to their plain meaning and his claim is unfounded on any evidence, there is no genuine issue to be tried. See United Oil Co. v. UrbanDevelopment Commission, supra, 158 Conn. 378 (defining genuine issue as "triable, substantial or real issue of fact . . . which can be maintained by substantial evidence"). The plaintiff has provided no "evidentiary facts, or substantial evidence . . . from which the material facts alleged in the pleadings can warrantably be inferred." See id., 378-79.
In addition, the plaintiff asserts mere conclusions of law with CT Page 3462 no facts to support his assertion. See Gutpa v. New BritainGeneral Hospital, supra, 239 Conn. 583 (party's conclusory statements, "in the affidavit and elsewhere," may not "constitute evidence sufficient to establish the existence of disputed material facts"). He has provided no admissible evidence to create any triable issue that the defendant made any fraudulent misrepresentation. See Peerless Insurance Co. v. Gonzalez, supra,241 Conn. 481 ("Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment.").
The plaintiff has failed to properly allege the claim for fraudulent representation and has provided no admissible evidence to create any question of fact or triable issue, even if the court views the allegations in the light most favorable to the plaintiff. The defendant is entitled to judgment as a matter of law because his statement does not satisfy the requisite elements of a cause of action for fraudulent misrepresentation and is not facially false or fraudulent. See Citino v. Redevelopment Agency, supra, 51 Conn. App. 275-76. Because there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment is granted as to count thee [three]. See Practice Book § 17-49; Miller v. United Technologies Corp. , supra, 233 Conn. 752 (appropriate to render directed verdict "where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed");Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989) ("motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried").
Count Four: Constructive Trustee
The plaintiff claims in count four that the defendant became a constructive trustee of "special fund" that attached to the sale proceeds of the premises.
"In Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386,122 N.E. 378 (1919), Judge Cardozo wrote: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' See 5 Scott, Trusts (3d Ed.) § 462, p. 3413. The CT Page 3463 imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment. 5 Scott, op. cit. § 462. Thus, a constructive trust arise where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Cohen v. Cohen, 182 Conn. 193,202-203, 438 A.2d 55 (1980).
The plaintiff has not alleged, and the record does not show, that the estate or the defendant administrator has retained legal title to the sale proceeds; the defendant distributed the fund to the heir, Mansi, pursuant to the final order of accounting, which the probate court had approved. Because the court had entered a final judgment vacating the default judgment underlying the judgment lien, the plaintiff had no legal title to the fund at the time of the distribution and therefore had no equitable claim to the fund. The defendant points out correctly that he "never promised to disregard the Housing Court's dismissal of [the plaintiff's] judgment and to instead act as his personal escrow agent ad infinitum." (Defendant's memorandum of law, p. 18).
Summary judgment should be granted on count three because the plaintiff has asserted a mere conclusion of law that is not supported by any admissible evidence and thus fails to create any genuine issue as to any material fact, and because the defendant is entitled to judgment as a matter of law. See Practice Book §17-49; see Connell v. Colwell, supra, 214 Conn. 246; Home Ins.Co. v. Aetna Life Casualty, supra, 235 Conn. 202.
Summary Judgment for Disiposition of Issues of Good Faith or BadFaith
The defendant argues that he made payment of estate funds to the heirs of the estate in good faith and pursuant to probate law and procedure, therefore he is entitled to the protection of General Statutes § 45a-202 and not liable for the money so paid. The plaintiff argues that the issue whether the defendant acted in good faith is a question of fact, therefore the issue is not amenable to summary judgment. The plaintiff suggests that there is a genuine issue regarding whether the defendant acted in good faith or in bad faith in releasing the fund after he was given notice that the plaintiff had filed a motion to extend time to file an appeal from the vacating of his default judgment.
"We recognize that summary judgment is ordinarily inappropriate CT Page 3464 where an individual's intent and state of mind are implicated. . . . The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." (Internal quotation marks omitted.) Appleton v. Board ofEducation, 53 Conn. App. 252, 259, 730 A.2d 88 (1999). "[E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact."Wadia Enterprise, Inc. v. Hirschfeld, 224 Conn. 240, 250,618 A.2d 506 (1992).
General Statutes § 45a-202 (a) provides, "Any person, acting as a fiduciary as defined by section 45a-199 or in any other fiduciary capacity, who in good faith makes payments or delivers property or estate pursuant to the order of the court of probate having jurisdiction before an appeal has been taken from such order, shall not be liable for the money so paid, or the property so delivered, even if the order under which such payment or delivery has been made is later reversed, vacated or set aside." In relying on this statute, the defendant has the burden to prove good faith on his part in releasing the fund. See In re Estate ofLehan, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 537978 (October 24, 1995, O'Neill, J.).
"In common usage, the term `good faith' has a well defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. . . . It has been well defined as meaning `An honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious.'" (Citation omitted; internal quotation marks omitted.) Kendzierski v. Goodson, 21 Conn. App. 424, 429-30,574 A.2d 249 (1990). Bad faith has been defined as "the absence of good faith." Habetz v. Condon, 224 Conn. 231, 237, 618 A.2d 501
(1992). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted; internal quotation marks omitted.) Id. CT Page 3465
The defendant has met the burden of proving that he acted in good faith in releasing the fund. The record shows that the probate court approved his final accounting and he released the fund pursuant to that accounting and as required by probate law and procedure. The defendant was entitled to the presumption that he relied in good faith on the housing court's vacating of the plaintiff's default judgment, which rendered the judgment lien void and unenforceable. See Brookfield v. Candlewood ShoresEstates, Inc., 201 Conn. 1, 7, 513 A.2d 1218 (1986) ("a judgment, rendered by a court with jurisdiction, is presumed to be valid and not clearly erroneous until so demonstrated raises a presumption that the rendering court acted only after due consideration, in conformity with the law and in accordance with its duty"). The defendant's reliance in good faith proved to be correct because the vacating decree was sustained on appeal inJaser v. Mansi, 33 Conn. App. 933 (1994), and became a final judgment from the date of its entry, which was March 5, 1993. SeePreisner v. Aetna Casualty Surety Co., supra, 203 Conn. 415;Connecticut Bank Trust Co. v. Winters, supra, 225 Conn. 159-60. The defendant had no duty to wait for the plaintiff to file an appeal and, if he did, exhaust the appeal, which could take months and years. The plaintiff did not appeal the probate court's order of distribution and he could not make such an appeal because he could not be "aggrieved" within the meaning of General Statutes § 45a-186. See Urrata v. Izzillo, supra,1 Conn. App. 19-20. In addition, even though it was not necessary, the defendant waited until the plaintiff's statutory appeal period expired when he distributed the fund and there was no certainty that the court may grant the plaintiff's motion to extend time to file an appeal. The defendant was therefore entitled to the protection of General Statutes § 45a-202 (a).
By contrast, the plaintiff has failed to present any factual predicate that would raise a genuine issue of fact regarding whether the defendant acted in good faith in distributing the fund. The plaintiff has provided no evidence to support his assertion that the alleged written agreements represented a unilateral agreement by the defendant to hold the sale proceeds in escrow for the benefit of the plaintiff and not to distribute the fund without the unilateral consent by the plaintiff The plaintiff has provided no legal authority to buttress his claim that the defendant had a legal obligation not to distribute the fund to the heir entitled to it under probate law and procedure, but instead to him as the heir's creditor, and that the defendant CT Page 3466 had a continuing obligation to pay him even after his judgment lien had become void and unenforceable. The plaintiff has not provided any authority to show why the defendant should ignore the vacating judgment and the heir's demand for distribution and suspend distribution pending plaintiff's anticipated appeal and its outcome. The plaintiff has failed to cite any authority to support his claim that the defendant had an affirmative duty to bring an impleader action in a court of general jurisdiction for the determination of the title to the sale proceeds. The plaintiff has failed to give any evidence contradicting the defendant's well documented and reasoned defense of good faith. The plaintiff has given no affidavit disputing any material facts.
With regard to a different but related issue, the court's reasoning in Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17,597 A.2d 846 (1991) (Berdon, J.), is illustrative as to the line drawing between questions of law and fact. Ruling on the defendant's motion to strike the claim of intentional infliction of emotional distress, the court states, "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy [the requisite elements of the cause of action] is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." Id., 18. By analogy, whether the defendant's action based on the evidence on record, and viewed in the light most favorable to the plaintiff, is sufficient to the protection of General Statutes § 45a-202 (a) and the good faith defense in general is, in the first instance, a question of law for the court to decide. Only where reasonable minds can differ does it become an issue for the jury. It is for the court to determine whether on the evidence good or bad faith can be found; it is for the jury to determine whether, on the evidence, good or bad faith has in fact existed. See 1 Restatement (Second), Torts § 46, comment (j) ("It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.").
No reasonable minds can differ as to whether the defendant acted in good or bad faith because the plaintiff has failed to present any factual predicate to raise a genuine issue of fact and the defendant has given adequate evidence showing that he acted in good faith. Therefore, there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law. See Home Ins. Co. v. Aetna Life Casualty, supra, CT Page 3467235 Conn. 202 ("a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue"); Peerless Insurance Co. v. Gonzalez, supra, 241 Conn. 481 ("Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]."); HeymanAssociates No. 1 v. Insurance Co. of Pennsylvania, supra,231 Conn. 795 (if "there [are] no contradictory affidavits, the court properly [may decide] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof'); WadiaEnterprise, Inc. v. Hirschfeld, supra, 224 Conn. 250 ("[E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact.").
 CONCLUSION
Because there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, the defendants' motion for summary judgment is granted as to all counts of the complaint.
Bruce W. Thompson, Judge